

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2008

# Wilson v. Vaughn

Precedential or Non-Precedential: Precedential

Docket No. 04-1623

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Wilson v. Vaughn" (2008). *2008 Decisions.* Paper 758.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/758

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-1623

———

THEOPHALIS WILSON

v.

DONALD T. VAUGHN;
THE DISTRICT ATTORNEY OF
THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA,
                                    Appellants

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cv-01605)
District Judge:  Hon. Berle M. Schiller

———

Argued April 15, 2008

Before:  SLOVITER, JORDAN and ALARCÓN[*],
Circuit Judges

(Filed: July 18, 2008)

———

—————————

[*]  Hon. Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

John W. Goldsborough (Argued)
Philadelphia, PA 19107-3499

     Attorney for Appellants

Barnaby C. Wittels (Argued)
LaCheen, Dixon, Wittles & Greenberg
Philadelphia, PA 19102-0000

     Attorney for Appellee

———

OPINION OF THE COURT

———

SLOVITER, <u>Circuit Judge</u>.

The scenario underlying this appeal reads like a popular television series.  A gang of criminals set out to rob drug dealers and use the money to buy guns; they then used the guns to entice transactions with other drug dealers; in the course of their crime spree, they committed six murders; they required one would-be gang member to kill an innocent victim as a condition of joinder; and they committed other nefarious acts, such as more conventional drug and gun sales.  The events did not take place in the city of the fictional TV series but in the very real city of Philadelphia.  Before us is the Commonwealth's appeal of the District Court's grant of a writ of habeas corpus for one member of the gang.

**I.**

**Introduction**

Theophalis Wilson was convicted by a jury in a Pennsylvania Common Pleas Court of three counts each of first-degree murder, robbery, and criminal conspiracy, as well as one count of possession of an instrument of crime.  The offenses of conviction were committed in 1989.  He was also convicted at the same time of one count under Pennsylvania's Corrupt

2

Organizations Act ("PACOA"), a statute that is similar to the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). While Wilson's case was on direct appeal, the Pennsylvania Supreme Court ruled that PACOA required criminal infiltration of a legitimate business enterprise and did not apply to a wholly illegal organization. Commonwealth v. Besch, 674 A.2d 655, 660 (Pa. 1996). There is no dispute that the gang in which Wilson was affiliated had a wholly illegal purpose. The Pennsylvania Supreme Court has also ruled that its conclusion in Besch was not a "new rule of law" and is fully retroactive to cases on collateral review. Kendrick v. District Attorney, 916 A.2d 529, 531 (Pa. 2007). The Commonwealth now agrees that Wilson's PACOA conviction must be vacated.

The District Court granted a writ of habeas corpus on the ground that Wilson's counsel rendered ineffective assistance. In determining whether Wilson suffered prejudice, an element of an ineffective assistance of counsel claim, we must consider whether evidence of "other crimes" that was admitted at Wilson's trial to prove the PACOA charge was so unfairly prejudicial that it warrants granting Wilson a new trial or whether the evidence was independently admissible to prove the murder and related charges.

## II.

### Factual Background and Procedural History

In 1989, petitioner Wilson, then age seventeen, was a member of a gang led by Christopher Williams. Among the other members were James White, James McArthur, Rick Bennett, David Lee (who was Wilson's uncle), and certain other persons living in the Germantown Archway, which was also known as the Magnolia Street Projects. The gang was known for robbing drug dealers in set-up guns-for-money or guns-for-drugs transactions. That is, the gang would propose to sell guns to drug dealers but rob the drug dealers of their drugs and money at gunpoint, sometimes killing the drug dealers.

In September 1989, Williams set up a sham sale of AK-47s to three Jamaican drug dealers from New York City – Gavin

Anderson, Kevin Anderson, and Otis Reynolds – by going to New York and contacting them about coming to Philadelphia to buy some guns. On September 24, 1989, Williams offered White "a couple of hundred bucks" to procure a dark-colored van, and White obliged by stealing one. Trial Tr. 49, July 26, 1993. The following day, Williams directed White and Bennett to drive the van to a housing project in Germantown near the residence of Williams' girlfriend.

Later that day, Wilson met the three drug dealers and drove them to the Germantown residence on the pretext of the pre-arranged gun sale. When the three drug dealers entered, several gang members, including Williams and Bennett, drew their guns. The gang members robbed the drug dealers of all the cash on their persons, approximately $2400, the anticipated cost for two guns. Williams demanded additional money while pointing his handgun at one victim's head. That victim finally admitted he had additional cash elsewhere. Williams and Bennett took him out of the residence to retrieve those funds and thereafter took an additional $24,000 from him. They then shot and killed him. Meanwhile, Wilson, White and another gang member guarded the remaining two drug dealers at gunpoint. Williams and Bennett returned and ordered the other two drug dealers into the van. Wilson did not ride in the van but rather rode as a passenger in a Cadillac that escorted the van. After demanding more money from the other two drug dealers who denied they had any more, Williams shot them while in the van and, as it slowed down, dumped their bodies from the van.

Almost a year later, in July 1990, Special Agent Daniel Machonis of the federal Bureau of Alcohol, Tobacco, and Firearms ("ATF") learned that David Lee, Wilson's uncle, had been purchasing firearms for Williams' gang. Machonis confronted Lee and undertook to use Lee as a cooperator against Williams' gang. Through Lee, federal authorities learned that Lee had purchased a semi-automatic nine-millimeter Tech-9 firearm at Wilson's request, and had purchased other Tech-9 firearms and .45 caliber pistols for Williams between 1988-1990.

The case proceeded to trial with the Commonwealth using

4

White as its primary witness. The Commonwealth also introduced the testimony of Machonis as well as certain wiretaps in which Wilson negotiated to purchase firearms and bullet proof vests from Machonis, who had also posed as a gun dealer.

After a thirteen-day jury trial of Williams, Wilson, and Bennett, the jury found Wilson guilty of three counts each of (1) first-degree murder, (2) criminal conspiracy, (3) robbery, as well as one count each of (4) PACOA and (5) possessing an instrument of a crime. In the penalty phase of the deliberations, the jury rejected the death penalty requested by the Commonwealth for Wilson, and instead chose a life sentence. The trial court sentenced Wilson to three life sentences to be served concurrently on the murder convictions, five to ten years for each of the three robbery convictions, two to four years for each of the conspiracy convictions, eight to sixteen months for violation of PACOA, and six to twelve months for possession of an instrument of crime. All of the sentences were to run concurrently with the life sentences for murder. The trial court denied Wilson's post-trial motions.

The jury also convicted Williams of similar, though more extensive, charges and sentenced him to death. The jury acquitted Bennett of similar charges.

White was the only witness for the prosecution to testify about the triple robberies and murders for which Wilson was convicted. As part of his agreement to cooperate with the Commonwealth, White was spared the death penalty, and instead received six concurrent life sentences for six separate counts of first-degree murder, concurrent time on subsidiary counts, and protection from the co-conspirators.

Wilson was represented at trial and on direct appeal by Jack McMahon. Wilson filed a direct appeal to the Superior Court, challenging the admission of evidence regarding the 1990 gun transaction. That court affirmed the judgment of sentence in a memorandum opinion holding that the challenged evidence was admissible to show a violation of PACOA as well as the "extent and nature" of the gang's operations. App. at 116. The Pennsylvania Supreme Court denied allocatur. Wilson filed a pro

5

se petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), which petition was amended on May 18, 1999 after new counsel, Thomas Quinn, filed an appearance on Wilson's behalf. The petition argued that McMahon was ineffective in failing to challenge both the admission of the evidence introduced to support the PACOA charge and the evidence of the post-1989 illegal arms purchases. The PCRA court dismissed the petition on July 7, 2000. Wilson appealed pro se to the Superior Court. The Superior Court affirmed the dismissal of the PCRA petition. It held that McMahon was not ineffective because the PACOA sufficiency claim could not have been raised on direct appeal as it had been waived and because he could not have anticipated the change in the law. Wilson did not file a petition for allocatur in the Pennsylvania Supreme Court.

On March 25, 2002, Wilson filed a pro se petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania, followed by two amended petitions. He then obtained counsel who filed a brief consolidating the claims into a list of fourteen – five trial court errors, eight instances of ineffective assistance of counsel, and one complaint of prosecutorial misconduct. The Magistrate Judge issued a Report & Recommendation, recommending that the Court deny the petition.

The District Court, reaching only one of the issues of ineffectiveness,[1] granted the writ of habeas corpus, vacated Wilson's convictions and ordered a new trial. The Court determined that Wilson's ineffective assistance of counsel claim was not procedurally defaulted. With respect to the merits, the District Court held that McMahon was constitutionally ineffective for failing to argue on direct appeal that the conviction for violating PACOA rested on insufficient evidence. The District Court held that Besch applied to all cases on direct appeal, citing Commonwealth v. Shaffer, 734 A.2d 840, 844 (Pa. 1999), and that

---

[1] Because the District Court reached only a single issue of ineffective assistance of counsel, we must remand for consideration of the remaining thirteen claims.

6

no deference to the state court's contrary view was required because the state court made an unreasonable determination of clearly established federal law in finding counsel effective despite his failure to raise Besch on direct appeal.

The District Court opined that the Superior Court's decision was internally inconsistent. The Superior Court stated on one hand that counsel was not ineffective for failing to raise Besch on direct appeal because it had been procedurally defaulted by counsel's failure to raise the issue at trial or in post-trial motions. On the other hand, it concluded that counsel was not ineffective for failing to raise the issue at trial or in post-trial motions because counsel should not have anticipated the change in the law brought by Besch. Thus, the District Court determined that the Superior Court failed to provide a plausible reason for counsel's complete failure to raise Besch at any stage of the proceedings, and that counsel's omission fell below objective standards of reasonableness.

The District Court also concluded that Wilson had shown prejudice because counsel's ineffectiveness "'undermine[d] confidence in the outcome' of the trial." App. at 26 (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)). The Court noted that Wilson's co-defendant Williams had already been granted a new trial on the ground that his counsel's failure to raise Besch prejudiced Williams because it resulted in the jury hearing prejudicial evidence to support the PACOA conviction that could not now be sustained. The District Court also stated that it "is difficult to believe that this evidence did not influence the jury regarding the murder charges, especially given that both the charges and the prejudicial evidence involved allegations of Petitioner engaging in illegal gun sales." App. at 27. Thus, according to the Court, there was a reasonable probability that but for counsel's errors the result of Wilson's criminal trial would have been different.

The Commonwealth appealed. On May 19, 2004, this court granted the Commonwealth's motion to stay briefing on the appeal pending disposition of a question this court certified to the Pennsylvania Supreme Court, i.e., whether Besch was a new rule that could not be applied retroactively to cases on collateral review.

7

Kendrick, 916 A.2d at 531.[2] The Pennsylvania Supreme Court held that it was not a new rule, and could be applied to cases on collateral review. In Kendrick, the Commonwealth had argued that Besch should be overruled in light of a post-Besch legislative amendment extending PACOA to wholly illegal enterprises, but the Pennsylvania Supreme Court declined to do so.

This court thereafter lifted the stay of briefing. Significantly, after this appeal had been fully briefed, the Supreme Court of Pennsylvania reversed the decision of the Superior Court in Williams which was the basis of the District Court's grant of the habeas writ in Wilson's case. See Commonwealth v. Williams, 936 A.2d 12 (Pa. 2007).

The principal issue raised in this appeal is whether Wilson is entitled to a new trial because McMahon's failure to press or preserve the Besch issue led to the admission of evidence to prove the PACOA charge which unfairly prejudiced Wilson with respect to the murder, robbery, criminal conspiracy, and possession of an instrument of crime charges. The evidence Wilson claims was unfairly prejudicial was the testimony of Lee (Wilson's uncle) and ATF Agent Machonis pertaining to Wilson's gun transactions. Wilson argues that evidence of the subsequent gun transactions was inadmissible for purposes of proving the murders because it occurred a year after the murders and would have otherwise been inadmissible as other crimes/bad acts evidence under Rule 404(b) of the Pennsylvania Rules of Evidence. The Commonwealth argues that the gun evidence was independently admissible under state law on the murder, robbery, and conspiracy charges independent of its relevance to the PACOA charge, and that its admission did not violate fundamental fairness.

---

[2] While this case was stayed, Wilson filed another PCRA petition claiming, under Roper v. Simmons, 543 U.S. 551 (2005), that because he was under eighteen years old when he committed the offense he could not have formed the specific intent for first-degree murder. The PCRA court dismissed the petition and the Superior Court affirmed on November 13, 2006.

## III.

## Discussion

According to Wilson, the jury that convicted him of three murders and related offenses heard evidence that was admissible only because he was also charged with violating PACOA. Wilson argues that if McMahon had rendered effective assistance of counsel, McMahon would have anticipated that the Pennsylvania Supreme Court would limit PACOA to infiltration of legitimate businesses, in light of the Court's strong indication of its views about the meaning and purpose of the statute in its opinion in Commonwealth v. Bobitski, 632 A.2d 1294, 1296 (Pa. 1993) (observing that the purpose of the statute was to prevent infiltration of legitimate businesses). Thus, Wilson suggests, McMahon should have objected to the Commonwealth's lack of evidence of infiltration of a legitimate business at trial and should have raised the issue in post-trial motions.

Wilson also argues that McMahon was ineffective by failing to raise the Besch Court's limitation of PACOA in his direct appeal to the Superior Court, as Besch had been decided by then. A successful challenge on that basis, according to Wilson, would have led to the vacating of the PACOA charge and with it the "highly inflammatory testimony" concerning Wilson's subsequent gun purchasing behavior many months thereafter. Appellee's Br. at 34-35 (emphasis omitted).

In order to analyze Wilson's ineffective assistance of counsel claim we must apply the familiar two-prong test enunciated by the Supreme Court in Strickland v. Washington, i.e., a determination whether counsel's performance was deficient when measured by an objective reasonableness standard and whether the deficient performance prejudiced the defense. 466 U.S. at 687. We need not address the issue of counsel's performance if we determine that no prejudice resulted from counsel's conduct. See id. at 697; McAleese v. Mazurkiewicz, 1 F.3d 159, 170-71 (3d Cir. 1993).

Wilson argues that he was prejudiced by the admission of

9

the gun transaction evidence admitted to prove the PACOA charge. Thus, it is evident that Wilson's ineffective assistance of counsel claim depends on whether that evidence would have been admissible absent the PACOA charge. Admissibility of evidence is a state law issue. Cf. Estelle v. McGuire, 502 U.S. 62, 72 (1991) (declining to pass upon state evidentiary issue in habeas proceeding). Ordinarily, we would be required to return this case to the state court so that it could make the crucial evidentiary determination because no state court has squarely considered this issue throughout the history of this case.[3] See Dickerson v. Vaughn, 90 F.3d 87, 92 (3d Cir. 1996) ("[A] state should be given the opportunity to correct its own errors and federal remedies should be designed to enable state courts to fulfill their constitutional obligations to the defendant."); McKeever v. Warden SCI-Graterford, 486 F.3d 81, 85 (3d Cir. 2007) ("'a habeas court does not have power to directly intervene in the process of the tribunal which has incorrectly subjected the petitioner to the custody of the respondent official.'") (quoting Barry v. Brower, 864 F.2d 294, 301 (3d Cir. 1988)). Here, however, that is not necessary because the Pennsylvania Supreme Court has already decided that issue in connection with the same evidence and the same trial in its decision in the appeal of Wilson's co-defendant, Williams.

While this appeal was pending, the Supreme Court of Pennsylvania decided Williams. That case involved co-defendant Christopher Williams, the leader of the gang with which Wilson was affiliated. If we remanded this case, the state court would be bound to apply the principles set forth in the Williams decision. See Pries v. Workers' Comp. Appeal Bd., 903 A.2d 136, 144 (Pa. Commw. Ct. 2006) ("'The rule of stare decisis declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different.'") (quoting

---

[3] At oral argument the Commonwealth attorney argued that "for all intents and purposes" the state courts had ruled on the evidentiary issue, but ultimately admitted that the "question wasn't squarely before [the state courts]."

10

Commonwealth v. Tilghman, 673 A.2d 898, 903 n.9 (Pa. 1996)). See also Schaaf v. Kaufman, 850 A.2d 655, 659 n.5 (Pa. Super. Ct. 2004) (stating that binding precedent is a "decision that 'must be followed when similar circumstances arise'") (quoting Black's Law Dictionary (7th ed. 1999)). Thus, we do not need to remand the case because we can apply the clear principles of Pennsylvania law as set forth in Williams, which would be binding precedent on any state court to consider this issue, even though the parties are different.

The Williams decision sets forth the following relevant background facts. At the same trial as Wilson, the jury convicted Williams of three counts of first-degree murder (for the victims Gavin Anderson, Kevin Anderson, and Otis Reynolds), three counts of first-degree robbery (for the same three victims), three counts of criminal conspiracy pursuant to 18 Pa. Cons. Stat. § 903, one count of violating PACOA, and one count of possessing an instrument of crime. The jury acquitted Williams of a fourth count of first- degree murder for the murder of William Graham, the taxi cab driver murdered by White so that he could gain admittance to Williams' gang.

The jury sentenced Williams to death for each of the three murders. Williams undertook to file a series of appeals, that were generally unsuccessful. Then, on May 14, 2002, the PCRA court granted Williams' PCRA petition with respect to his claim that his appellate counsel had been ineffective in failing to raise the issue of the applicability of Besch on direct appeal. The PCRA court concluded that if direct appeal counsel had raised Besch on appeal the PACOA conviction would have been reversed. The only issue, therefore, was whether Williams should be given a new trial on the other charges based on the fact that the evidence to prove the PACOA charge had been admitted at trial. The PCRA court concluded that Williams' conviction, which resulted in a death sentence, could not be based on "'highly inflammatory evidence'" that was only admissible for purposes of proving the PACOA conviction which was now invalid. Williams, 936 A.2d at 17 (quoting PCRA court opinion). Therefore, the PCRA court ordered

11

a new trial. The Commonwealth appealed.[4]

The Pennsylvania Supreme Court decided that even if there were problems with Williams' claim that appellate counsel was ineffective for failing to raise Besch on direct appeal, the PACOA conviction nevertheless violated due process and Williams was "plainly [] entitled to collateral relief on the [PACOA] conviction, whether as a Sixth Amendment matter or a due process matter." Id. at 26. The more difficult question, however, according to the Supreme Court, was whether Williams was entitled to a new trial on the theory that the evidence concerning the PACOA charge would have been otherwise inadmissible and unfairly prejudicial. To that end, the Court stated that "even if trial counsel could be faulted, in hindsight, for failing to forward the argument that later prevailed in Besch, [Williams] has failed to prove prejudice–i.e., he has failed to prove that the [PACOA] evidence which came in would both: (1) not otherwise have been admissible; and (2) caused him Strickland/Pierce prejudice." Id. at 29.

In a lengthy and detailed opinion, the Pennsylvania Supreme Court then proceeded to consider each category of evidence that Williams claimed would not have been admissible absent the PACOA charge and that prejudiced him as a result. Turning first to the testimony from James White and James McArthur concerning uncharged other crimes where Williams was directly involved, the Court held that this category of evidence would have been admissible under Pennsylvania Rule of Evidence 404(b)(2). That rule tracks Federal Rule of Evidence 404(b), and allows admission of other crimes evidence for a purpose other than proving criminal character/propensity, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Id. at 30-31 (citing Commonwealth v. Dillon, 925 A.2d 131, 136-137 (Pa. 2007)). In addition, evidence of other crimes may be relevant and admissible under Pennsylvania law "to show 'part of the chain or sequence of events which became part

---

[4] The PCRA court dismissed all of Williams' other claims. Williams also appealed the dismissal of those claims, which are not relevant to the instant case.

12

of the history of the case and formed part of the natural development of the facts.'" Id. at 31 (quoting Dillon, 925 A.2d at 137 (internal citation omitted)). Thus, the Court held that because Williams had been charged with criminal conspiracy, "the Commonwealth was entitled to show the full scope and extent of the conspiracy charged, so that the individual crimes would not be presented in a vacuum, lacking context." Id. The Court reasoned that the other crimes evidence at issue in the testimony of White and McArthur was admissible to show Williams' "intent to conspire to rob drug dealers at gunpoint and kill them if necessary." Id.

Second, the Court then considered the testimony by James White and co-defendant Bennett about the attempted robbery of David Perez, who was a drug dealer; the attempted robbery resulted in the murder of one Marron Jenrette. This evidence was not introduced against Williams, but was introduced against Bennett. Because the trial court gave a limiting instruction that the evidence could only be considered against the defendant for whom it was offered, the Court concluded that the evidence was not prejudicial to Williams.

Third, the Court turned to the testimony by White and Dr. Ian Hood about the robbery and murder of drug dealer Michael Haynesworth. The Court concluded that the evidence would have been admissible absent the PACOA conviction to prove Williams' intent to conspire to rob drug dealers and kill them if necessary. Id. at 34.

Fourth, the Court considered the testimony by White and McArthur about the attempted robbery of two other drug dealers known as "Troy" and "Sweetest." In addition to being offered against Williams on the PACOA charge, this evidence was also introduced against Bennett with respect to a charge against him. Thus, it was lawfully admitted and not unfairly prejudicial to Williams.

Fifth, the Court looked to the testimony by David Lee about illegal gun purchases made by Williams and Wilson between 1988-1990. This category of evidence is particularly relevant for

13

purposes of this appeal. David Lee had testified that he purchased two guns for Williams in 1988 and 1989 and three guns for Wilson in 1990. Williams claimed that this evidence of "other crimes," namely, the purchase of illegal firearms, was irrelevant and unfairly prejudicial to prove the charges against him in the absence of the PACOA charge. The Court rejected that argument, holding that "this evidence was relevant to complete the story of how appellee obtained the weapons which he himself used to rob, and occasionally kill, other drug dealers." Id. at 35. The Court went on to explain that "[t]he probative value of this evidence was strong because [Williams'] illegal handguns were an intricate tool in his organization's conspiracy to rob drug dealers at gunpoint." Id.

Sixth, the Court considered the evidence of surveillance tapes and testimony from ATF Agent Machonis regarding attempts to purchase guns, drugs, and bulletproof vests by Wilson on behalf of the organization. This category is also highly relevant to the instant appeal. Because the evidence was admitted for the purpose of proving the PACOA charge against Wilson, and because the trial court issued a limiting instruction that it was not to be considered in connection with Williams, the Court concluded that Williams had not suffered prejudice. Although the Court did not discuss whether the evidence would have been admissible against Wilson, we can reasonably infer, based upon the Court's reasoning with respect to the other categories of evidence, that it would have held that the evidence would be admissible against Wilson for the purpose of proving how Wilson obtained the type of weapons that were an integral part of the overarching conspiracy's purpose.

Seventh, the Court summarily dismissed the claims based on the prosecutor's closing argument as having not been prejudicial.

In sum, although the Pennsylvania Supreme Court affirmed the PCRA court's decision to vacate Williams' PACOA conviction, it reversed the PCRA court's order to the extent that it granted Williams a new trial for the reasons discussed above. It remanded for issues related to Williams' cross-claims that are not relevant here.

The Court acknowledged that Williams' counsel's failure to

14

anticipate Besch prevented him from raising an objection at trial. Similarly, the absence of objection obviated the need for the Commonwealth attorney to make an offer of proof about why the evidence was being admitted, which would ordinarily be required under Pennsylvania evidentiary law. Thus, the trial court was prevented from engaging in the probative value/prejudice weighing that it normally would have undertaken in such a case. However, as the Court explained, this did not mean that Williams should prevail. Id. at 31-32. It reasoned that the fact that the PACOA conviction would have been set aside on direct review if counsel had raised it does not mean that "Besch-derivative or Besch-tangential claims would have been entertained . . . ." Id. at 27. That is because Besch does not address derivative evidentiary claims but rather provides a limited remedy – vacating the PACOA conviction. Id.

There are two categories of evidence that Wilson argues prejudiced him and required granting him a new trial now that his PACOA conviction must be set aside. He argues that the testimony of David Lee concerning Wilson's purchase of firearms from Lee and the testimony of ATF Agent Machonis regarding the sting set-up implicating Wilson in firearms transactions should both have been excluded because the firearm transactions occurred "nearly a full year after" the murders for which Wilson was convicted. Appellee's Br. at 39 (emphasis omitted).

Wilson's contentions are controlled by the decision in Williams. "'Typically, all relevant evidence, i.e., evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility.'" Williams, 936 A.2d at 30 (quoting Dillon, 925 A.2d at 136). The evidence concerning Wilson's firearms purchases is patently relevant to prove that Wilson was involved in a criminal conspiracy that used guns to attack drug dealers. As the Court recognized in Williams, not all relevant evidence is admissible. However, even "evidence of separate or unrelated 'crimes, wrongs, or acts,'" which is not admissible as character evidence against a criminal defendant, may be admissible under Pennsylvania Rule of Evidence 404(b)(2) to prove motive,

15

opportunity, intent, identity, plan, knowledge, preparation, or absence of mistake. Id. at 31 (citations omitted). Other crimes evidence may also be admissible to prove "part of the chain or sequence of events which became part of the history of the case . . . ." Id. (citations and internal quotations omitted). As the Court recognized in Williams, typically the prosecutor must make an offer of proof to the trial court judge, so that the judge can undertake the appropriate probative/prejudice balancing before deciding whether to admit the evidence for one of the permitted purposes. However, following the holding in Williams, the lack of such a balancing in this particular case is not dispositive because in effect, the Supreme Court of Pennsylvania undertook the balancing itself and determined that the evidence was not unduly prejudicial. See id. at 31-32.

The evidence concerning Wilson's firearms purchases was admissible to prove motive, as well as to prove a sequence or chain of events all connected to the criminal conspiracy to rob and kill drug dealers. Like Williams, Wilson was also charged with criminal conspiracy. "The crime of corrupt organizations targets criminal confederations; thus, it is but a subspecies of conspiracy." Id. at 31. Therefore, "the Commonwealth was entitled to show the full scope and extent of the conspiracy charged, so that the individual crimes would not be presented in a vacuum, lacking context." Id. Thus, the evidence concerning Wilson's illegal firearms transactions "was relevant to complete the story of how appellee obtained the weapons which he himself used to rob, and occasionally kill, other drug dealers." Id. at 35. Moreover, "[t]he probative value of this evidence was strong because . . . illegal handguns were an intricate tool in [the] organization's conspiracy to rob drug dealers at gunpoint." Id. In sum, the testimony of both Lee and Machonis was independently admissible to prove criminal conspiracy under at least one of the exceptions to Pennsylvania Rule of Evidence 404(b).

The District Court held that appellate counsel's performance was constitutionally deficient because he did not raise Besch on direct appeal. The District Court stated that it "is difficult to believe that this evidence did not influence the jury regarding the murder charges, especially given that both the charges and the

16

prejudicial evidence involved allegations of Petitioner engaging in illegal gun sales." App. at 27. The Court did not undertake to provide much detailed analysis on the issue of prejudice, however, as it appeared to rest its decision significantly on the fact that Williams had been granted a new trial by the PCRA court at the time this case was before the District Court. That decision has now been reversed.

Our discussion above leads us to the conclusion that Wilson has not suffered Strickland prejudice because the evidence in question would have been admissible absent the PACOA conviction. Moreover, the Pennsylvania Supreme Court stated that admission of that evidence did not create a "reasonable probability that the trial court's failure to exclude [it] . . . essentially caused [the] murder, robbery, or conspiracy convictions[,]" Williams, 936 A.2d at 35, and thus that no Strickland prejudice resulted. We note that in concluding to the contrary, the District Court did not have before it the recent Pennsylvania Supreme Court decision in Williams declaring that Williams was not, in fact, entitled to a new trial.

**IV.**

**Conclusion**

For the above-stated reasons, we will affirm the judgment of the District Court granting the writ insofar as it was based on the need to remand to the state court to vacate Wilson's PACOA conviction. We will reverse the District Court's decision granting a new trial based upon ineffective assistance of counsel and will remand to the District Court for consideration of Wilson's remaining claims.