

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-17-2008

# Williams v. Beard

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5182

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Williams v. Beard" (2008). *2008 Decisions.* Paper 354.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/354

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-5182
_____

CHRISTOPHER WILLIAMS,

Appellant

v.

JEFFREY BEARD, Pennsylvania Department of Corrections;
DONALD VAUGHN, Superintendent of the State Correctional
Institution at Graterford

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 01-cv-4947)
District Judge: Honorable Mary A. McLaughlin

_____

Argued:  September 25, 2008

Before:  BARRY, AMBRO, and JORDAN, *Circuit Judges*

(Filed:  October 17, 2008)
_____

Maureen Rowley
Stuart B. Lev   [ARGUED]
Victor J. Abreu
Federal Community Defender Office
Eastern District of Pennsylvania
Capital Habeas Corpus Unit
The Curtis Center - Suite 545 West
Independence Square West

Philadelphia, PA 19106
      *Counsel for Appellant*

Marilyn F. Murray [ARGUED]
Thomas W. Dolgenos
Ronald Eisenberg
Arnold H. Gordon
Lynne Abraham
Three South Penn Square
Corner of Juniper & S. Penn Square
Philadelphia, PA 19107-3499
      *Counsel for Appellee*s

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Christopher Williams appeals the District Court's order dismissing his federal habeas petition as untimely. Although he concedes that he is statutorily barred under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, from asserting his habeas claims, he argues that his petition is entitled to equitable tolling. For the following reasons, we will affirm the District Court's order dismissing his petition.

I. Facts and Procedural History

On January 22, 1992, Williams was convicted of first degree murder, kidnaping, robbery, possession of an instrument of crime, and conspiracy to commit murder.[1] His trial counsel filed post-verdict motions. After argument on those motions, Williams requested new counsel because he wanted to challenge trial counsel's effectiveness, and another lawyer ("post-verdict counsel") was ultimately appointed. On September 12, 1994, after an evidentiary hearing at which trial counsel testified, the trial court denied Williams's post-verdict motions and sentenced him to life imprisonment without parole for the first degree murder conviction, with consecutive terms of five to ten years of imprisonment on each of the robbery, kidnaping, and conspiracy charges.

Through letters and phone messages, Williams asked post-verdict counsel to appeal his conviction. Although he sent post-verdict counsel numerous letters asking about the status of his appeal, Williams allegedly never received a response. Thirty days after he was sentenced, Williams's judgments of sentence became final. Approximately one and a half years later, Williams wrote a letter to the Pennsylvania Superior Court asking whether an appeal had been filed, to which the Superior Court replied that no appeal had been filed on his behalf.

---

[1]These convictions resulted from Williams and his co-defendants luring nineteen-year-old Michael Haynesworth to an apartment, robbing him, beating him with a hammer, and eventually killing him with a bullet to the head.

After attempting to contact post-verdict counsel again, Williams filed a petition in the Pennsylvania Superior Court to have new counsel appointed. The Superior Court denied his petition "without prejudice to seek relief in the trial court," and Williams filed a *pro se* petition for relief under Pennsylvania's Post Conviction Collateral Relief Act ("PCRA"). In his PCRA petition, he alleged that his right to appeal had been denied due to ineffective assistance of counsel, and he asked that either his appellate rights be reinstated *nunc pro tunc* or, in the alternative, that he be granted a new trial based on ineffective assistance of counsel. He also requested that new counsel be appointed.

The trial court did appoint new counsel ("first PCRA counsel") to represent Williams in the PCRA proceedings, and that lawyer filed an "Amended Petition for Post Conviction Collateral Relief in the Form of a Petition to Appeal Nunc Pro Tunc to Superior Court" and a supplemental amended petition. Both amendments included allegations that post-verdict counsel was ineffective for failing to file a direct appeal and that trial counsel was ineffective for a number of reasons. The trial court dismissed the amended PCRA petition, determining that the claims were without merit.

Williams, still represented by his first PCRA counsel, appealed the trial court's decision to the Pennsylvania Superior Court, claiming that the trial court erred in denying his PCRA petition without a hearing and that his claims of ineffectiveness were appropriate bases for relief.

4

While that appeal was pending, the Pennsylvania Supreme Court decided

*Commonwealth v. Lantzy*, 736 A.2d 564 (Pa. 1999).  In *Lantzy*, the court held that a

lawyer's failure to file a requested direct appeal constitutes ineffective assistance of

counsel and entitles a PCRA petitioner to restoration of his direct appeal rights *nunc pro*

*tunc.  Id.* at 571-72.[2]  Therefore, under *Lantzy*, in the special circumstance of a failure to

file a requested appeal, a petitioner is not required to establish his innocence or

demonstrate the merits of the issues he would have raised on appeal in order for his direct

appeal rights to be reinstated *nunc pro tunc*, *id.* at 572, even though a review of the merits

is usually essential to an ineffective assistance of counsel claim.

On November 24, 1999, the Pennsylvania Superior Court, without citing *Lantzy*,

affirmed the PCRA court's denial of Williams's request for relief.  The Superior Court

analyzed Williams's claims of ineffective assistance of counsel by using the Pennsylvania

Supreme Court's test in *Commonwealth v. Kimball*, 724 A.2d 326 (Pa. 1999), which does

require petitioners to demonstrate the merits of the arguments they would have raised on

appeal.[3]  The Pennsylvania Supreme Court denied Williams's timely Petition for

---

[2]Prior to *Lantzy*, the procedure under Pennsylvania law for requesting reinstatement of appeal rights was to file a Petition for Leave to Appeal *nunc pro tunc* (NPT Petition) rather than a PCRA petition.  *See Commonwealth v. Hernandez*, 817 A.2d 479, 482-83 (Pa. 2003) (discussing pre-*Lantzy* law).

[3]A few months after the Superior Court affirmed the denial of PCRA relief in Williams's case, it held in two cases decided *en banc* that the rule of law announced in *Lantzy* could not be retroactively applied. *Commonwealth v. Hitchcock*, 749 A.2d 935 (Pa. Super. 2000); *Commonwealth v. Garcia*, 749 A.2d 928 (Pa. Super. 2000).  Two years later, however, the Pennsylvania Supreme Court held in *Commonwealth v. Eller*, 807

5

Allowance of Appeal on June 29, 2000. *Commonwealth v. Williams*, 759 A.2d 923 (Pa. 2000) (table).

On August 28, 2000, Williams, represented by new counsel again, filed a second PCRA petition. In that petition, he argued that, because he had previously been denied his constitutional right to a direct appeal, his prior PCRA petition should be treated as a direct appeal and his newly filed petition should be accepted as a timely, first PCRA petition.[4] The PCRA court dismissed the new petition as untimely on April 16, 2001. Williams appealed that decision to the Pennsylvania Superior Court, which affirmed the dismissal on February 12, 2003. The Pennsylvania Supreme Court denied allowance of appeal on August 6, 2003.

While his appeal of the dismissal of his second PCRA petition was pending in the Superior Court, Williams filed a Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of Pennsylvania, alleging violations of his Fifth, Sixth, Eighth, and Fourteenth Amendment constitutional rights. On October 12, 2001, Williams filed a petition to hold the federal proceedings in abeyance pending final

---

A.2d 838, 844 (Pa. 2002), that *Lantzy* was not a new rule of law and, therefore, should be applied "retroactively" as a correct interpretation of previously existing law.

[4]Although Williams's second PCRA petition is not in the record, the claims in that petition are described as including ineffective assistance of post-verdict counsel for failing to file an appeal, ineffective assistance of first PCRA counsel, and a mixture of allegations involving ineffective assistance of trial counsel, prosecutorial misconduct, and ineffective assistance of all prior counsel on a number of grounds relating to events at trial.

6

disposition of his state court appeal of the dismissal of his second PCRA petition. The case was referred to United States Magistrate Judge Carol Sandra Moore Wells for a recommendation. On February 19, 2002, Judge Wells issued a Report and Recommendation that concluded that Williams's habeas petition should be dismissed without prejudice for presenting both exhausted and unexhausted claims. The Magistrate Judge also addressed the government's argument that the petition should be dismissed with prejudice for being time-barred under the applicable statute of limitations in AEDPA. She rejected the government's argument and concluded that Williams was entitled to statutory tolling while his second PCRA petition was pending, even if the state courts ultimately ruled it was procedurally defaulted. *Cf.* 28 U.S.C. § 2244(d)(2) ("The time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." (emphasis added)). Judge Wells stated that, under then-existing Third Circuit and Supreme Court precedent, "the fact that a petitioner's claims, ultimately, may be procedurally defaulted is not relevant to the appropriateness of the filing." (App. at 70.) She still recommended that the petition be dismissed without prejudice, rather than be held in abeyance, because Williams's stated concern in filing his federal petition before proceedings were concluded on his second PCRA petition – namely, that the AEDPA deadline would expire – was unfounded since

7

his second PCRA petition should, she said, toll the limitations period. Both parties filed objections.

On September 5, 2002, the District Court approved and adopted the Magistrate Judge's Report and Recommendation except to the extent that it concluded that Williams's untimely second PCRA petition was "properly filed" and served to toll the AEDPA statute of limitations. The District Court expressly declined to decide whether the second PCRA petition was "properly filed," but it agreed that Williams's petition to hold the federal proceedings in abeyance should be denied, and it dismissed the habeas petition without prejudice and declined to issue a certificate of appealability. Williams filed a timely notice of appeal.

By the time we reviewed Williams's appeal, the state court proceedings on his second PCRA petition had concluded. We then asked the parties to show cause why the District Court's September 5, 2002 order should not be vacated and the case remanded for a determination of whether the habeas petition was timely filed, and, if so, whether the claims were exhausted or procedurally barred. On February 4, 2004, following the parties' submissions, we granted a certificate of appealability, vacated the District Court's order dismissing the habeas petition, and remanded the case to the District Court for disposition.

The District Court again referred the case to Magistrate Judge Wells for a Report and Recommendation. After holding the petition in abeyance pending the United States

8

Supreme Court's decision in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), Judge Wells issued a Report and Recommendation concluding that Williams's petition should be dismissed as untimely. Her decision was largely based on the Supreme Court's decision in *Pace*, in which the Court held that state post-conviction petitions rejected by state courts as untimely are not "properly filed" within the meaning of AEDPA. *Id.* at 410. Because the state courts had determined that Williams's second PCRA petition was untimely filed,[5] Judge Wells concluded that that petition could not toll the AEDPA limitations period. Williams's habeas petition was therefore untimely. The Magistrate Judge also determined that equitable tolling of AEDPA's limitations period was improper in this case because Williams could not establish that "extraordinary circumstances" prevented the timely filing of his petition.[6] Williams filed objections to that Report and Recommendation.

On December 1, 2006, the District Court ruled on the objections and, in a thorough and well-reasoned opinion, dismissed Williams's habeas petition as untimely. *Williams v. Beard*, No. 01-4947, 2006 WL 3486457 (E.D. Pa. Dec. 1, 2006). The Court rejected

---

[5]The PCRA states that "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final ... ." 42 Pa.C.S. § 9545(b)(1). Williams filed his second PCRA petition on August 28, 2000, which was almost six years after his judgment became final.

[6]In *Pace*, the Supreme Court stated that "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." 544 U.S. at 418.

Williams's arguments that extraordinary circumstances prevented him from filing a timely habeas petition. Williams had argued that he had been prevented from filing a timely petition because the state courts failed to follow clearly established law and because federal habeas relief was unavailable.[7] In his view, both of those circumstances were "extraordinary" and warranted equitable tolling of AEDPA's statute of limitations. He further argued that, even if there were no extraordinary circumstances, the Court should still equitably toll the limitations period because his conviction in this case was used as an aggravating factor in a subsequent capital case.[8]

As to Williams's first assertion, that the state courts failed to follow clearly established law, Williams argued that the state courts dismissed his first PCRA petition without reinstating his direct appeal rights *nunc pro tunc* because they mistakenly applied the Pennsylvania Supreme Court's decision in *Kimball*, instead of applying the more recent decision in *Lantzy*.[9] According to Williams, had the state courts applied the

---

[7]Before the District Court, Williams cited a total of four extraordinary circumstances that prevented him from timely filing his federal habeas petition. On appeal he only pursues the two arguments stated, namely that the state courts failed to follow clearly established law and that habeas relief was effectively unavailable.

[8]Another panel of this Court has recently described some of Williams's crimes in detail. *See Wilson v. Vaughn*, 533 F.3d 208 (3d Cir. 2008).

[9]In *Kimball*, the Court held that the test for determining ineffective assistance of counsel under the PCRA is the same as the test applied on direct appeal. 724 A.2d at 333. According to *Kimball*, that test requires the defendant to show, "by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. This requires the petitioner to show: (1) that

10

holding in *Lantzy*, they would have treated his first PCRA proceedings as a direct appeal, which would in turn have made his second PCRA petition timely and thus "properly filed" for purposes of tolling AEDPA's limitations period.

In reviewing Williams's argument that the state courts misapplied Pennsylvania law, the District Court held that it was not clearly established state law that Williams's second PCRA petition should be treated as being his first while the first PCRA petition should be treated as his direct appeal. The District Court agreed with Williams that the state courts had misapplied the law by failing to follow *Lantzy*, since Williams had clearly asked his counsel to file an appeal. But the District Court noted that no Pennsylvania case had ever held that when a PCRA petition requesting reinstatement of direct appeal rights is erroneously denied, the accompanying PCRA proceedings should be considered a direct appeal. To the contrary, the District Court found that *Lantzy* actually made clear that a petition requesting reinstatement of appeal rights should be treated as a PCRA petition, because PCRA proceedings are the sole means of requesting reinstatement of appeal rights. *See Lantzy*, 736 A.2d at 570 ("[T]he PCRA provides the exclusive remedy

---

the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.* In *Lantzy*, the Court held that the unjustified failure to file a requested direct appeal satisfies the test for ineffective assistance of counsel, without the need to inquire into the merits of the petitioner's planned arguments on appeal. 736 A.2d at 572.

for post-conviction claims seeking restoration of appellate rights due to counsel's failure to perfect a direct appeal ... .").

Under these circumstances, the District Court held that Williams had failed to demonstrate that extraordinary circumstances prevented him from timely filing a habeas petition:

> Although the state courts erred in dismissing his first PCRA petition without reinstating his appeal rights, the petitioner was nevertheless free to file a timely habeas petition after this dismissal. The petitioner instead decided to file a second PCRA petition, gambling that the state courts would consider the prior proceedings to be his direct appeal. The petitioner's failure to file a timely habeas petition therefore resulted from a strategic decision, not an "extraordinary circumstance."

*Williams*, 2006 WL 3486457, at *5.

Williams's second argument is that he was entitled to equitable tolling because habeas relief was unavailable to him when he filed his second PCRA petition. Essentially, Williams argues that he was entitled to equitable tolling because he could not file a timely habeas petition due to having unexhausted claims.

The District Court rejected that argument too, holding that Williams could have filed a timely habeas petition that included only his exhausted claims. The Court stated that, in the alternative, Williams could have filed a habeas petition that included all of his claims and then sought relief from the Court to protect the unexhausted claims. The District Court pointed to *Morris v. Horn*, 187 F.3d 333 (3d Cir. 1999), in which a district court dismissed the habeas petition without prejudice to the petitioner's right to file an

12

amended petition under the relation-back doctrine, as an example of a federal court protecting a petitioner's unexhausted claims. *But see Jones v. Morton*, 195 F.3d 153, 160-61 (3d Cir. 1999) ("[C]ourts have recognized that, if a petition is dismissed for failure to exhaust state remedies, a subsequent petition filed after exhaustion is completed cannot be considered an amendment to the prior petition, but must be considered a new action."). The Court also stated that Williams could have filed his habeas petition and then asked the Court to stay review and hold the petition in abeyance until the unexhausted claims were presented to the state courts. Although we did not approve of that procedure until 2004, the District Court asserted that it was recognized in other circuits and that Williams could have attempted it. Because Williams was not prevented from filing a petition containing only his exhausted claims or a "protective" habeas petition, the Court held that no "extraordinary circumstance" prevented the filing of his habeas petition. Thus, it found that he was not entitled to equitable tolling.[10]

---

[10]Having found that no extraordinary circumstance existed to warrant equitable tolling, the District Court did not reach the merits of Williams's argument that he exercised reasonable diligence in attempting to investigate and bring his claims. The Court did address, however, Williams's argument that he was entitled to equitable tolling regardless of the existence of an extraordinary circumstance. According to Williams, because his conviction in this case, a non-capital case, was used as an aggravating factor in a subsequent capital case, he was entitled to equitable tolling because the threshold for tolling is lower in capital cases. The District Court rejected that argument. It held that our case law makes clear that AEDPA's statute of limitations should be equitably tolled for less than extraordinary circumstances only when the petitioner faces the death penalty. Because this case is not a capital case, the District Court refused to apply the exception. Williams's counsel acknowledged at oral argument that the District Court's refusal to

13

Williams filed a notice of appeal and moved for a certificate of appealability with this court. On August 21, 2007, we granted his motion on the issue of whether he was entitled to equitable tolling.

II. Standard of Review

Our review of the timeliness of a federal habeas petition is plenary. *Hartmann v. Carroll*, 492 F.3d 478, 480 (3d Cir. 2007). Where, as here, the facts supporting the petitioner's claim for equitable tolling are undisputed, our review of a district court's decision to grant or deny equitable tolling is *de novo*. *Taylor v. Horn*, 504 F.3d 416, 427 n.6 (3d Cir. 2007) (quoting *Brinson v. Vaughn*, 398 F.3d 225, 231 (3d Cir. 2005)).[11]

III. Discussion

Williams argues that the District Court's refusal to equitably toll AEDPA's statute of limitations was erroneous. He maintains that he meets the requirements for equitable tolling because he pursued his rights with reasonable diligence but, due to extraordinary circumstances, was prevented from asserting his rights. *See Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (describing two-part test for equitable tolling). As earlier discussed, Williams argues that two extraordinary circumstances prevented the timely

---

treat this as a capital case was likely correct and that Williams does not take issue with that ruling on appeal.

[11]Although *Brinson* does not clearly establish our standard of review in equitable tolling cases, as the *Brinson* court declined to definitively resolve the question, we cited *Brinson* in *Taylor*, a precedential opinion, and in several non-precedential opinions, for establishing a *de novo* standard of review.

filing of his habeas petition: first, the state courts' failure to apply clear Pennsylvania law, and, second, the unexhausted nature of some of his claims when AEDPA's statute of limitations period expired.

AEDPA's one-year statute of limitations period should be equitably tolled "'only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice.'" *Schlueter v. Varner*, 384 F.3d 69, 75 (3d Cir. 2004) (quoting *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999)). "Mere excusable neglect is not sufficient." *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 619 (3d Cir. 1998).

A.      *State Courts' Application of Pennsylvania Law*

Williams claims that the state courts considering his PCRA petitions misapplied Pennsylvania law in at least two instances and that those errors worked together to create "extraordinary circumstances" that prevented his filing of a timely federal habeas petition. First, he claims that the Court of Common Pleas erroneously viewed his petition for reinstatement of appellate rights *nunc pro tunc*, including his subsequent amendments to that petition, as a PCRA petition and thus that the court inappropriately reached the merits of his claims. Essentially, Williams argues that that error caused the state courts that considered his second PCRA petition to likewise view his first petition as a PCRA petition rather than a direct appeal. Second, Williams alleges that, in the appeal from the denial of his first PCRA petition, the Superior Court should have reinstated his direct appellate rights *nunc pro tunc*, in accordance with the Pennsylvania Supreme Court's

15

intervening decision in *Lantzy*, because his petition met all of the requirements for that relief.

We agree with the District Court's conclusion that Williams's "failure to file a timely habeas petition ... resulted from a strategic decision, not an 'extraordinary circumstance.'" *Williams*, 2006 WL 3486457, at *5. In fact, Williams made at least two decisions to file PCRA petitions rather than pursue other courses that, under then-existing law, may have been more fruitful.

First, Williams chose to file and twice amend an initial petition seeking reinstatement of his appellate rights *nunc pro tunc* within the framework of the PCRA. As previously noted, *supra* at n. 2, Pennsylvania law at the time required a petitioner who sought reinstatement of his appellate rights *nunc pro tunc* to file a motion with the Court of Common Pleas. A request to reinstate those rights was not cognizable under the PCRA unless the petitioner showed actual innocence or demonstrated the merits of the issues he would have raised on appeal. *See Commonwealth v. Petroski*, 695 A.2d 844, 844 (Pa. Super. 1997) (applying pre-*Lantzy* law and holding that "the Post Conviction Relief Act requires that a petitioner both plead and prove facts establishing that the violation of the constitutional right or the ineffectiveness of counsel so undermined the truth-determining process as to render a finding of guilt unreliable."). Thus, contrary to Williams's

16

argument, the Court of Common Pleas did not "refuse[] to apply clearly established law" when it decided his first PCRA petition on the merits.[12]

Second, Williams took a known risk when he filed his second PCRA petition, evidently hoping that the state courts would view his first petition as a direct appeal. Like the District Court, we have been unable to find any Pennsylvania case that stands for the proposition that a PCRA proceeding seeking reinstatement of direct appellate rights should be considered a direct appeal when that PCRA petition has been denied.[13] To the contrary, as the District Court noted, *Lantzy* itself explains that "the Pennsylvania PCRA provides the sole means of obtaining collateral review[,] ... including requests for

---

[12]Williams's counsel's theme at oral argument, namely that the state courts deprived him of the two opportunities – direct review and post-conviction review – to which state law entitles him, rings hollow because he and his counsel presented his first set of claims within the PCRA framework. Even if it were unclear whether, pre-*Lantzy*, a petitioner seeking to have his direct appeal rights reinstated *nunc pro tunc* was to file an NPT petition rather than a PCRA petition, the state courts cannot be faulted for viewing Williams's petition as it was presented to them.

[13]Williams cites *Commonwealth v. Lewis*, 718 A.2d 1262 (Pa. Super. 1998), *Commonwealth v. Karanicolas*, 836 A.2d 940 (Pa. Super. 2003), *Commonwealth v. O'Bidos*, 849 A.2d 243 (Pa. Super. 2004), and *Commonwealth v. Fowler*, 930 A.2d 586 (Pa. Super. 2007). However, Williams's case is different. In the cited cases, the defendants' PCRA petitions requesting reinstatement of direct appeal rights *nunc pro tunc* were *granted*. Thereafter, the defendants filed second PCRA petitions. The Pennsylvania Superior Court held in all four cases that these second PCRA petitions should be treated as if they were actually the defendants' first PCRA petitions because the original PCRA petitions were never considered on the merits. In the present case, Williams was never granted relief *nunc pro tunc* and his first PCRA petition was considered on its merits by the state courts. The concern expressed in *Lewis*, *Karanicolas*, *O'Bidos*, and *Fowler,* that the defendants would not receive post-conviction review if their second petitions were to be dismissed as untimely, does not exist here.

reinstatement of appeal rights." *Williams*, 2006 WL 3486457, at *5 (citing *Lantzy*, 736 A.2d at 569-70). In light of the case law, it was not reasonable for Williams to think that his first PCRA petition was going to be treated as a direct appeal, even though the Superior Court arguably acted erroneously in failing to follow *Lantzy*.[14]

In sum, Williams has failed to point us to an instance where the state courts neglected to follow clearly established law so as to create an extraordinary circumstance preventing him from filing a timely habeas petition after his first PCRA proceedings concluded.

B.      *Failure to Exhaust Claims in State Court Prior to Expiration of AEDPA's Statute of Limitations Period*

Williams's second alleged extraordinary circumstance is that, after the state courts refused to reinstate his appellate rights, he had no other way of preserving his right to habeas review of the additional claims he wanted to bring other than to file a second PCRA petition.

Williams claims he had three options, and none of them were good. First, he could have filed a mixed habeas petition including both his exhausted and unexhausted claims and requested a stay from the District Court. At that time, however, case law suggested that mixed habeas petitions would be dismissed. It was not until 2004 that we

---

[14]We need not determine whether the Superior Court's failure to apply *Lantzy* when deciding Williams's first post-conviction appeal was error, though it is true that *Eller* would require the Superior Court to apply *Lantzy* if it were faced with Williams's first PCRA petition today.

established, in *Crews v. Horn*, 360 F.3d 146 (3d Cir. 2004), that district courts could stay habeas petitions pending exhaustion of state remedies. Williams asserts that his second option would have been to file a habeas petition raising only his exhausted claims, while simultaneously trying to exhaust his other claims in state court. By the time he exhausted his second set of claims, however, the federal habeas statute of limitations would have precluded review of a second habeas petition with his new claims. According to Williams, his third option, the one he finally chose, was to file a second PCRA petition asking that the state courts correct their prior "error" in failing to reinstate his appellate rights. Although risky, this was his best option, Williams contends, because of our pre-*Crews* jurisprudence.[15]

Williams argues that the dilemma he faced is similar to the one faced by the petitioner in *Slutzker v. Johnson*, 393 F.3d 373 (3d Cir. 2004), in which we excused a

---

[15]Williams's respect for our precedent is admirable but seems less than genuine because, when he did eventually file his habeas petition in 2001, our law had not changed. *Crews* was decided three years after he filed his petition. Williams's assertion that he filed the habeas petition in light of the Supreme Court's plurality decision in *Duncan v. Walker*, 533 U.S. 167, 182-83 (2001) (Stevens, J., concurring), is belied by his failure to mention *Duncan* in the habeas petition itself. Instead, Williams cited a number of Third Circuit and District Court decisions decided before he filed his second PCRA petition. (Supp. App. at 80-82 (citing *Duffey v. Lehman*, No. 94-9003, 1996 WL 13154 at *7 (3d Cir. Jan. 16, 1996) *vacated as moot*, 84 F.3d 668 (3d Cir. 1996); *Carpenter v. Vaughan*, No. 95-9001 (3d Cir. Oct. 17, 1995); *Lloyd v. Mazurkiewicz*, No. 94-CV-5544, 1995 WL 422743 (E.D. Pa. July 14, 1995)).) These cases, as well as other persuasive, pre-existing precedent from other circuits, *see Freeman v. Page*, 208 F.3d 572, 577 (7th Cir. 2000) *and Brewer v. Johnson*, 139 F.3d 491, 493 (5th Cir. 1998), suggested that a mixed habeas petition was a viable option in certain circumstances in the Third Circuit.

petitioner's procedural default. Williams, however, has put himself in an entirely different situation than that faced by the petitioner in *Slutzker*. In that case, petitioner Slutzker, acting *pro se*, filed a timely federal habeas petition. 393 F.3d at 377. It was not until two years later that Slutzker, still acting *pro se*, discovered police reports that the prosecution had failed to previously disclose. *Id.* at 377-78. In light of those new reports, he then filed an amended habeas petition that included claims under *Brady v. Maryland*, 373 U.S. 83 (1963). He did not, however, first exhaust those claims in state court, nor did he move for a stay of the federal proceeding so that he could do so. *Id.* at 379.

Nonetheless, we held that Slutzker had established cause excusing his procedural default in failing to exhaust his *Brady* claims. *Id.* at 385. Slutzker faced a dilemma because, while "a conscientious attorney in Slutzker's position might have considered the 'stay-and-abey' procedure as a possibility," no then-existing Supreme Court or Third Circuit precedent approved of that procedure. *Id.* at 383. Had we ordered the district court to dismiss Slutzker's amended habeas petition, a re-filing of his exhausted claims would have been untimely, thus preventing review of all but his *Brady* claims. *Id.*

In this case, rather than file a timely habeas petition, Williams, with advice from counsel, gambled by filing a second, time-barred PCRA petition in the hope that the state courts would view his first PCRA proceedings as a direct appeal. When Williams eventually filed his protective habeas petition, it, too, was untimely.

20

Moreover, Slutzker did not know about his new claims until he discovered, after he had already exhausted his other claims and filed his habeas petition, that the government had failed to produce *Brady* evidence. *Id.* at 377-78. Williams, in contrast, does not argue that he discovered new evidence. The only undeniably "new" claim he included in his second PCRA petition that could not have been in the first was his allegation that he received ineffective assistance from his first PCRA counsel. As to the other claims in his second PCRA petition, it appears that he simply neglected to bring them earlier. The logical extension of the "extraordinary circumstances" argument Williams would have us accept would be to allow a petitioner to toll the AEDPA statute of limitations indefinitely simply by obtaining new counsel, claiming ineffective assistance of previous counsel, and alleging new claims based on a fresh review of an old record.

Williams had opportunities to seek federal habeas relief. As the District Court found, he "could have abandoned his unexhausted claims and filed a habeas petition containing only those claims he had exhausted in his first PCRA petition [or] filed a habeas petition and sought protection for his unexhausted claims from the federal court." *Williams*, 2006 WL 3486457, at *6; *see also Schlueter v. Varner*, 384 F.3d 69, 76 (3d Cir. 2004) ("Generally, in a non-capital case ... attorney error is not a sufficient basis for equitable tolling of AEDPA's one-year period of limitation."). In short, nothing extraordinary prevented Williams from filing a habeas petition.

21

IV. Conclusion

Since no extraordinary circumstance warrants the tolling of the AEDPA statute of limitations, we will affirm the District Court's order dismissing Williams's petition.[16]

---

[16]Because we agree with the District Court that there were no extraordinary circumstances, we need not reach the question of whether Williams exercised reasonable diligence in pursuing his rights.