

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-18-2005

# Brinson v. Vaughn

Precedential or Non-Precedential: Precedential

Docket No. 02-4466

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Brinson v. Vaughn" (2005). *2005 Decisions*. Paper 1091.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1091

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**AMENDED**                    PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 02-4466 and 02-4479
_____

CURTIS BRINSON,

Appellant

v.

DONALD VAUGHN; THE DISTRICT ATTORNEY OF THE
COUNTY OF PHILADELPHIA; THE ATTORNEY
GENERAL OF THE STATE OF PENNSYLVANIA


_____


ON APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

District Court Judge: Honorable John P. Fullam
(D.C.  No. 00-cv-6115)
(D.C. No. 01-cv-3915)

_____


Argued: September 14, 2004

Before:  SCIRICA, <u>Chief Judge</u>, ALITO, and AMBRO, <u>Circuit
Judges</u>

(Opinion Filed: February 8, 2005)


NORRIS E. GELMAN (Argued)
The Public Ledger Building
620 Chestnut Street, Suite 940
Philadelphia, PA  19106

*Counsel for Appellant*
ROBERT M. FALIN (Argued)
Assistant District Attorney
1421 Arch Street
Philadelphia, PA  19102-1582

*Counsel for Appellees*

_____

OPINION OF THE COURT
_____

ALITO, <u>Circuit Judge</u>:

This is an appeal from a District Court order denying Curtis Brinson's petition for a writ of habeas corpus.  Brinson was convicted in state court in Pennsylvania on one count of murder in the first degree and a lesser offense and was sentenced to imprisonment for life.  The District Court held – and we agree – that his federal habeas petition was timely because it was proper to apply the doctrine of equitable tolling to the period of time following the District Court's erroneous dismissal of Brinson's prior habeas petition.  Contrary to the District Court, however, we hold that Brinson made out a prima facie case of a violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), and we therefore reverse the order of the District Court and remand for an evidentiary hearing.

I.

In April 1985, Arthur Johnson was shot and killed in the bathroom of a Philadelphia nightclub.  Brinson, an African American, was arrested for the crime, and the selection of the jury for his trial began on April 28, 1986, two days before the Supreme Court of the United States announced its decision in <u>Batson</u>.

In <u>Batson</u>, the Supreme Court set out a three-step procedure for determining whether a prosecution violated the Equal Protection Clause by peremptorily striking potential jurors based on

2

race.[1]  First, the party asserting the claim must make out a prima facie case.  See 476 U.S. at 96.  In order to do this, the party must point to facts that "raise an inference" that a challenged strike was based on an impermissible ground.  Id.  Second, if a prima facie case is established, the party who exercised the challenge must "come forward with a neutral explanation."  Id.  Third, if a neutral explanation is offered, the trial judge must make a finding as to whether the contested peremptory was based on an impermissible ground.  Id. at 98.

On May 2, 1986 – after Brinson's jury had been selected but before the trial began – his attorney objected that the prosecutor had violated Batson by striking prospective African American jurors based on race.[2]  Brinson's attorney stated that the prosecutor, Jack McMahon, had "exercised fourteen peremptory challenges, thirteen for blacks."  He also asserted that McMahon "seldom, if ever, questioned blacks prior to exercising his peremptory challenges."  In response, McMahon did not deny using 13 peremptories against blacks, but he stated that he did not remember the race of each juror whom he had peremptorily challenged, that he recalled striking both African Americans and whites, that he had not used all of his allotted strikes, and that three African Americans had been selected for the jury.  At this point, neither the trial judge

---

[1]Although Batson concerned prosecution strikes based on race, the decision was later extended to strikes by criminal defendants, Georgia v. McCollum, 505 U.S. 42 (1992), and parties in civil cases, Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614 (1991), and to strikes based on clasifications other than race.  See, e.g., J.E.B. v. Alabama ex rel T.B., 511 U.S. 127 (1994) (gender).

[2]The voir dire took place before Batson was handed down, and Brinson's attorney did not object when the prosecutor made the peremptory challenges.  As a result, the transcript does not reveal the race of the individuals whom the prosecution struck.  The state courts did not hold, and the Commonwealth does not contend in this appeal, that Brinson procedurally defaulted his Batson claim by failing to raise an objection at the time when the challenges were exercised.

nor the attorneys had actually read Batson, and the trial judge announced that he would not rule on the defense objection prior to trial but that the issue could be raised in a post-trial motion. The case was then tried, and Brinson was found guilty of murder in the first degree and possession of an instrument of crime. He was sentenced to life imprisonment.

Brinson again raised the Batson issue in a post-trial motion. At the hearing on the motion, Brinson's attorney repeated his previous assertions about McMahon's use of peremptory challenges, and McMahon again disclaimed any memory of how many strikes he had used against African Americans, stating that "[defense counsel] says I used thirteen strikes on Blacks and one on [a] White. I see nothing in the record to indicate that. I do not have any recollection of that whatsoever. I am sure the Court does." To this, the trial judge responded: "Yes, I do." McMahon then stated: "Be that as it may, I know I accepted the Black that the Defense struck."

The trial judge orally rejected Brinson's Batson argument on the ground that Batson had "not yet been accepted by this Commonwealth." The trial judge appears to have believed that he was still bound by pre-Batson Pennsylvania court decisions rejecting arguments similar to the one that the Supreme Court of the United States accepted in Batson.

The trial judge died before he could write an opinion addressing Brinson's post-trial motions, and the matter was reassigned to another judge. In his opinion on these motions, the new judge wrote the following with respect to Brinson's Batson argument:

> In the instant case the record indicates there were at least three black persons on the jury and the selection of the jury was completed with the prosecutor still having six [peremptory] strikes . . . . Thus, the record does not show any deliberate, purposeful exclusion of black persons from the jury in this case. Unfortunately, the trial judge died before writing his Opinion, and, therefore, we are without the benefit

4

of his personal observations as he conducted the voir dire. However, we have, as was stated [in Batson[3]], confidence, based upon the experience, character and reputation of [the trial judge], that he would not allow such a purposeful rejection of black persons solely by [peremptory] challenges as to deny this Defendant a fair jury trial.

On direct appeal, Brinson again raised the Batson issue, but the Superior Court affirmed Brinson's conviction. Invoking Commonwealth v. McKendrick, 514 A.2d 144 (1986), the Superior Court rejected the Batson claim on the ground that "where the victim, the perpetrator and witnesses are black, a prima facie case of racial discrimination is not present under Batson . . . ." The Superior Court continued:

In addition, the record establishes that three of the jurors in this case were black, the defense struck blacks, and the Commonwealth had six peremptory challenges left following the close of jury selection . . . . Accordingly, appellant has failed to establish that the prosecutor exercised peremptory challenges to remove black venire members, as required by [Batson]. An evidentiary hearing on this issue is not required.

Brinson raised his Batson claim in a petition for allocatur to the Pennsylvania Supreme Court, but the petition was denied.

In September 1993, Brinson filed a petition in state court under the Pennsylvania Post-Conviction Relief Act (PCRA). That petition claimed that trial counsel had been ineffective because, among other things, he had allegedly failed to object to the prosecution's systematic exclusion of African Americans from the jury.[4] Brinson's petition was denied without a hearing in January

---

[3]See 476 U.S. at 97.

[4]The ineffective assistance of counsel claim identified six failures by defense counsel: (1) failing to object to the systematic

1995. A timely appeal was taken, but the Superior Court affirmed the dismissal for two reasons: first, that the Batson claim had been litigated on direct appeal and therefore could not be raised under the PCRA, see 42 Pa. Con. Stat. Ann. § 95544(a)(3), and, second, that all of Brinson's claims were waived because Brinson allegedly failed to include a trial transcript as part of the official record. The Pennsylvania Supreme Court again denied allocatur.

Following the dismissal of his first PCRA petition, Brinson turned to the federal courts and filed a timely pro se petition for a writ of habeas corpus in which he presented eight grounds for relief, including his Batson claim.[5] While this petition was pending, a videotape entitled "Jury Selection with Jack McMahon" was released to the public. This tape depicted a training session in which McMahon advocated the use of peremptory challenges against African Americans. After the tape was released, Brinson filed a motion requesting that the District Court take judicial notice of the new evidence.

---

exclusion of African-Americans from the jury; (2) failing to preserve for appeal the denial of petitioner's motion for severance; (3) failing to challenge and preserve for appeal the issue of whether the prosecutor violated the rules of discovery; (4) failing to challenge and preserve for appeal the propriety of the prosecutor's questions regarding petitioner's post-arrest silence; (5) failing to challenge the admission of hearsay testimony; and (6) failing to challenge the prosecutor's reference to petitioner's post-arrest silence during summation.

[5]The additional grounds for relief in this petition were: (1) the state courts incorrectly concluded that some of his claims were waived; (2) trial counsel was ineffective in failing to move for severance of his trial from that of his co-defendant; (3) the Commonwealth failed to provide complete discovery; (4) the prosecutor violated due process by questioning him about post-arrest silence; (5) trial counsel was ineffective in failing to object to hearsay testimony; (6) co-defendant's girlfriend was improperly permitted to testify; and (7) the prosecutor made improper statements during his closing arguments.

The Magistrate Judge to whom the federal habeas petition was assigned for a report recommended that the petition be dismissed without prejudice on the ground that the Batson claim, as bolstered by the McMahon tape, was unexhausted and that the petition therefore contained both exhausted and unexhausted claims. The Magistrate Judge noted that the Batson issue had been litigated in state court on direct appeal and that the PCRA generally precludes re-litigation of claims, but the Magistrate Judge observed that the PCRA's one-year filing deadline contains an exception for claims predicated on facts that were previously unknown to the petitioner and that could not have been discovered through the exercise of due diligence. See 42 Pa. Cons. Stat. Ann. § 9545(b)(1)(ii). The District Court adopted this recommendation and dismissed the petition without prejudice on September 22, 1997.

Unfortunately, the District Court did not note that, by the time of its decision, the PCRA time limit for filing a claim based on newly discovered evidence – 60 days from the discovery of the evidence (see 42 Pa. Cons. Stat. Ann. § 9545(b)(2)) – had already passed. Moreover, in order to proceed with a new PCRA petition raising his Batson claim, Brinson felt that he was required to comply with the so-called "Spence rule," see Commonwealth v. Spence, 627 A.2d 1176 (Pa. 1993), and thus to identify the race of "the veniremen who had been removed by the prosecution, the race of all the jurors who served, [and] the race of jurors acceptable to the Commonwealth who had been stricken by the defense." Id. at 1182-83.[6] With the assistance of a law professor, Brinson spent 10 months attempting to compile these statistics. Brinson eventually filed his second PCRA action on July 30, 1998, but the PCRA court dismissed the petition as untimely, and the Superior Court affirmed.

On December 4, 2000, Brinson returned to federal court and filed a second habeas petition in which he raised the same claims

---

[6]We have held that the Spence rule is inconsistent with Batson. See Holloway v. Horn, 355 F.3d 707, 728-29 (3d Cir. 2004).

presented in his first petition. The Magistrate Judge recommended that the petition be dismissed as untimely, but the District Court did not adopt this recommendation, ruling that the running of the statute of limitations should be equitably tolled for the time period following the dismissal of the timely, first petition in September of 1997. The District Court reached this conclusion for two reasons. First, the Court stated that it had erred in dismissing Brinson's first, timely petition. The Court explained:

> The <u>Batson</u> issue had actually been presented to the state courts on direct appeal and in the first PCRA application. My conclusion that considerations of comity would best be served by permitting the state courts an opportunity to reconsider the issue in light of the recent disclosure of the McMahon tapes turned out to be unduly generous to the Commonwealth; petitioner's right to seek federal habeas relief should not be lost entirely, merely because of this Court's excessive deference to the state tribunals.

Second, the District Court stated that, even if Brinson had not exhausted his <u>Batson</u> claim on direct appeal, "it would have been preferable to stay, rather than dismiss, the first federal petition."

The District Court returned the case to the Magistrate Judge for a recommendation on the merits of the <u>Batson</u> claim, and the Magistrate Judge concluded, in an opinion adopted by the District Court, that Brinson had failed to establish a prima facie case under <u>Batson</u>. The Magistrate Judge opined that the record did not support a finding that McMahon had in fact used 13 of his 14 peremptory strikes against African Americans and that the McMahon tape, though "troubling," did not establish that McMahon had used impermissible tactics during Brinson's trial.

Brinson then took this appeal, claiming that the District Court erred in denying his <u>Batson</u> claim and in dismissing his additional claims *sub silentio*. The respondents (hereinafter "the Commonwealth") counter that the District Court should not have equitably tolled the statute of limitations but that, in any event,

Brinson's <u>Batson</u> claim was properly rejected on the merits.

II.

We first consider the question whether, as the District Court held, it was proper to toll the statute of limitations for the period from the dismissal of Brinson's first federal habeas petition until the filing of his current petition. It is settled that the one-year statute of limitations for filing a federal habeas claim under 28 U.S.C. § 2254 is subject to equitable tolling, see <u>Miller v. New Jersey State Dept. Of Corr.</u>, 145 F.3d 616, 618-19 (3d Cir. 1998), but that the doctrine should be invoked "sparingly." <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 95 (1990). We have said that equitable tolling is proper when the party in question "has in some extraordinary way been prevented from asserting his or her rights." <u>Brown v. Shannon</u>, 322 F.3d 768, 773 (3d Cir. 2003). One such potentially extraordinary situation is where a court has misled a party regarding the steps that the party needs to take to preserve a claim. See, e.g., <u>Baldwin County Welcome Center v. Brown</u>, 466 U.S. 147, 151 (1984) (referring to situation in which "the court has led the plaintiff to believe that she has done everything required of her"); <u>Hallgren v. U.S. Dept. of Energy</u>, 331 F.3d 588, 590 (8th Cir. 2003); <u>Lambert v. United States</u>, 44 F.3d 296, 299 (10th Cir. 1995); <u>Rys v. U.S. Postal Serv.</u>, 886 F.2d 443, 447 (1st Cir. 1989). In this case, the District Court held that equitable tolling was justified on this ground.

We have never decided what standard of appellate review should govern when a District Court applies the doctrine of equitable tolling in a habeas case, and the circuits are divided on the issue, with some applying de novo review, some using an abuse-of-discretion standard, and some employing different standards in different circumstances. See <u>Neverson v. Farquarson</u>, 366 F.3d 32, 42 n.11 (1st Cir. 2004); <u>Rouse v. Lee</u>, 339 F.3d 238, 248 n.7 (4th Cir. 2003) (collecting cases). On balance, we are inclined to believe that where, as here, the relevant facts are not disputed, a District Court's decision on the question whether a case is sufficiently "extraordinary" to justify equitable tolling should be reviewed de novo.

9

Three factors point in this direction. First, a District Court does not have any comparative advantage in deciding whether particular circumstances are extraordinary enough to warrant the application of the doctrine. Second, reversal of a District Court's ruling on this issue will not lead to a retrial or any other comparably burdensome proceedings. Third, de novo review leads to greater uniformity in the application of the doctrine and better serves the goal of ensuring that the doctrine is indeed used "sparingly" and is not employed to upset the strong concern for finality embodied in 28 U.S.C. § 2254.

In the present case, however, it is not necessary for us to resolve this question, because we would sustain the District Court's decision on the issue of equitable tolling under any of the standards used by other courts of appeals. We conclude that the District Court's mistaken dismissal of Brinson's first petition prevented Brinson in a sufficiently  extraordinary way from asserting his rights under the federal habeas statute. As the District Court ultimately recognized, Brinson had fully exhausted his Batson claim on direct appeal. It was therefore error for the District Court to dismiss his first federal habeas petition on the ground that this claim was not exhausted. In dismissing that petition, the District Court reasoned that Brinson's request for judicial notice of the McMahon tape transformed his Batson claim into one that differed from the claim raised on direct appeal, but this reasoning was flawed.

First, it is questionable whether Brinson's reliance on the McMahon tape fundamentally altered the previously exhausted claim because the tape merely confirmed the factual predicate of Brinson's Batson claim without changing its legal basis. See Vasquez v. Hillery, 474 U.S. 254, 258 (1986); Stevens v. Del. Corr. Ctr., 295 F.3d 361, 369 (3d Cir. 2002); Landano v. Rafferty, 897 F.2d 661, 673 (3d Cir. 1990). Second, as we explain in part III of this opinion, without the tape, Brinson had a meritorious claim that his trial attorney established a prima facie case under Batson and that the state courts violated Batson by failing to move on to the second and third steps of the Batson inquiry. Under these circumstances, the District Court, at a minimum, should have given Brinson the option of going forward with the precise claim that was

10

advanced on direct appeal.[7] See Rose v. Lundy, 455 U.S. 509, 510 (1982) (when petition is "mixed," petitioner must be given "choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court"). Instead, the District Court relegated Brinson to another round of state court litigation that was bound to fail because the 60-day period for raising a claim founded on newly discovered evidence had already passed.

The Commonwealth contends that Brinson did not act with the requisite "reasonable diligence" because he was allegedly dilatory in filing his second PCRA petition. The Commonwealth first faults Brinson because, when the McMahon tape was released, he did not file his second PCRA petition within 60 days thereafter but instead elected to proceed with his first federal habeas petition. The Commonwealth also argues that Brinson did not exhibit "reasonable diligence" because he did not file his second PCRA petition within 30 or 60 days after the District Court's dismissal of the first federal petition. The Commonwealth takes the figure of 30 days from our decision in Crews v. Horn, 360 F.3d 146 (3d Cir. 2004), in which we held that, where a District Court stays a mixed petition so that the petitioner can exhaust unexhausted claims, the petitioner must file in the state court within 30 days after the entry of the stay. The Commonwealth takes the figure of 60 days from Commonwealth v. Lark, 746 A.2d 585 (Pa. 2000), in which the Pennsylvania Supreme Court held that, when a ground for filing a second PCRA petition (such as the discovery of new evidence) arises while a previous PCRA action is still pending, the second petition is timely if it is filed within 60 days after the final resolution of the previous PCRA action.

Whatever other flaws these arguments may have, they all fail for the simple reason that Brinson, having already fully exhausted his Batson claim, had no obligation to file in state court

---

[7]It is unresolved whether additional claims presented in the first petition were unexhausted, but if they were, Brinson should have been given the choice of proceeding with the exhausted Batson claim and any other exhausted claims.

*at all.* Consequently, he cannot be faulted for failing to file such a petition within any of the time periods suggested by the Commonwealth. We thus hold that the District Court did not err in equitably tolling the statute of limitations.

## III.

### A.

We now consider the merits of Brinson's <u>Batson</u> claim. Because this claim was "adjudicated on the merits" in state court, the standards of review set out in 28 U.S.C. § 2254(d) apply. We must thus decide whether the state courts' "adjudication of the claim . . . resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with a Supreme Court decision in a case involving "materially indistinguishable" facts. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). "A state court decision fails the 'unreasonable application' prong . . . 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply.'" <u>Rico v. Leftridge-Byrd</u>, 340 F.3d 178, 181 (3d Cir. 2003) (quoting <u>Gattis v. Snyder</u>, 278 F.3d 222, 234 (3d Cir. 2002)).

### B.

In the present case, the explanations given by the state trial and appellate courts were all "contrary to" <u>Batson</u>, or at least represented unreasonable application of that precedent. First, the trial judge's statement that <u>Batson</u> had "not yet been accepted by

12

[the] Commonwealth" requires no comment.

Second, contrary to the post-trial opinion and the opinion of the Superior Court, a prosecutor may violate Batson even if the prosecutor passes up the opportunity to strike some African American jurors.[8] Batson was "designed to ensure that a State does not use peremptory challenges to remove *any* black juror because of his race." 476 U.S. at 99 n.22 (emphasis added). Thus, a prosecutor's decision to refrain from discriminating against some African American jurors does not cure discrimination against others.

Third, the opinion on the post-trial motion was plainly incorrect in suggesting that the trial judge must have found that the prosecutor had not discriminated in the use of peremptories and in deferring to that supposed finding. The trial judge never made any findings about the prosecutor's reasons for his strikes, and the trial judge did not follow the three-step process outlined in Batson. The trial judge did not decide whether Brinson's attorney had pointed to facts that established a prima facie case; the trial judge did not call upon the prosecutor to state his reasons for the contested strikes; and, as noted, the trial judge made no findings as to whether the prosecutor had followed a strategy of discrimination.

Fourth, the Superior Court was clearly wrong in holding that "where the victim, the perpetrator and witnesses are black, a prima facie case of racial discrimination is not present under Batson." Batson held that a prima facie case is established when "all relevant circumstances" give rise to "the necessary inference of purposeful discrimination." 476 U.S. at 96. Batson is very clear

---

[8]As noted, the post-trial opinion rejected Brinson's Batson claim because, among other things, "there were three black persons on the jury and the selection of the jury was completed with the prosecutor still having six [peremptory] strikes." Similarly, the Superior Court rejected the Batson claim in part because "there were at least three black persons on the jury and the selection of the jury was completed with the prosecutor still having six [peremptory] strikes."

that such an inference may be created by a variety of different circumstances. See id. at 96-97. The Court wrote:

> For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. *These examples are merely illustrative.*

Id. at 97 (emphasis added). To be sure, the race of a victim, the witnesses, and the defendant may be *relevant* because these facts may have a bearing on a prosecutor's motivation to use racially based strikes in a particular case, see United States v. Clemons, 843 F.2d 741, 747 (3d Cir.), cert. denied, 488 U.S. 835 (1988), but the rigid formula invoked by the Superior Court cannot be reconciled with Batson.

Finally, the Superior Court's reliance on the fact the "the defense struck blacks" was misplaced. Suppose that the defense dismisses a particular African American juror for a permissible non-racial ground and that the prosecution then strikes other African American jurors based on their race. The legitimate defense strike would not open the door for illegitimate prosecution strikes. Indeed, even if the defense itself violated equal protection by striking a potential juror based on race, this would not justify further constitutional violations by the prosecution. On the contrary, both the defense and prosecution strikes would be illegitimate. In sum, the various reasons given by the state courts for rejecting Brinson's Batson claim will not bear analysis.

C.

The District Court, as noted, held that Brinson's attorney did not point to facts that made out a prima facie case. We must disagree. We hold that any decision to this effect by the state courts would represent an unreasonable application of Batson.

1. The District Court concluded that the state court record

14

does not support Brinson's allegation that the prosecutor used 13 of his 14 peremptories against African Americans. In our view, however, the state court record compels such a finding.

As noted, Brinson's attorney first made this allegation shortly after jury selection was completed, and McMahon's response was telling. McMahon did not deny that he had used 13 of 14 strikes against African Americans. Nor did he deny that he had used all but one of his strikes against African Americans. Nor did he deny that he had used most of his strikes against African Americans. Nor did he say that, while unable to recall the exact figures, he remembered that his pattern of strikes was not anything like that alleged by the defense. Instead, he merely stated: "I don't know how many blacks or whites I struck. I know I struck both, that is a fact." This was a statement that McMahon could truthfully make so long as he did not recall the precise statistics – 13 of 14 strikes used against African Americans – that the defense alleged. If McMahon thought that the pattern might have been slightly different – say, 14 of 15 or 12 of 14 – McMahon could assert without fear of sanction from the trial judge that he did not know "how many blacks or whites [he] struck."

McMahon's comments – and those of the trial judge – at the post-trial proceeding were also revealing. When the trial judge announced that he was not going to rule on the Batson objection before trial but would return to the issue, if necessary, after the trial, McMahon was put on notice regarding the significance of the defense allegation. By the time of the post-trial hearing, McMahon had had time to digest Batson and to attempt to reconstruct the jury selection process, but McMahon again declined to contest the defense allegation. At the post-trial hearing, defense counsel repeated his charge that McMahon had used 13 of 14 strikes against African Americans and added: "I know Your Honor has notes with respect to this." McMahon then stated: "I do not have any recollection of that whatsoever. I am sure the Court does." The trial judge responded: "Yes, I do." McMahon then stated: "Be that as it may . . . ."

In context, McMahon's responses were tantamount to an admission that his pattern of strikes was at least similar to that

15

alleged by the defense. There is simply no other plausible explanation for his vague responses on two separate occasions. The trial judge's comments are also suggestive. If the judge's notes or recollection differed markedly from the facts claimed by the defense, it seems most unlikely that he would have failed to note that point on the record. For all these reasons, we conclude that the state court record compels the conclusion that the prosecution's peremptory challenges were exercised in accordance with the pattern alleged by the defense or a very similar pattern.

2. The pattern of strikes alleged by the defense is alone sufficient to establish a prima facie case under the circumstances present here. In Batson, as noted, the Supreme Court stated that "a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." 476 U.S at 97. The stark pattern here qualifies. Such a pattern, of course, does not necessarily establish racial discrimination, but particularly in the absence of any circumstance (such as a venire composed almost entirely of African Americans) that might provide an innocent explanation, such a pattern is more than sufficient to require a trial court to proceed to step two of the Batson procedure. See Holloway v. Horn, 355 F.3d 707, 722 (3d Cir. 2004) (finding prima facie case established when prosecutor used 11 of 12 strikes against African Americans).

This conclusion is not undermined by the fact that other factors suggestive of possible racial discrimination on the part of the prosecution are not present in the record of this case. In Clemons, 843 F.2d at 748, we noted that, in addition to a suspicious pattern of strikes, other factors that may be important in determining whether a prima facie case has been made out include an attorney's questions and statements during the selection process, the nature of the crime, and the race of the defendant and the victim. Here, we are not aware of any suspicious questions or statements made by the prosecution during the jury selection process, and it does not appear that the crime was racially charged. But the question whether a prima facie case has been established must be judged based on all relevant circumstances; no rigid test need be satisfied; and in some cases, a prima facie case may be made out based on a single factor. This is such a case.

16

IV.

We hold that the state courts' rejection of Brinson's <u>Batson</u> claim without proceeding to the second step of the <u>Batson</u> analysis cannot be sustained under 28 U.S.C. § 2254(d)(1). We therefore reverse the order of the District Court and remand. On remand, the Commonwealth should be given the opportunity to provide legitimate reasons for any strikes against African Americans. If it is unable to provide such explanations, Brinson will be entitled to habeas relief. If the Commonwealth is able to provide nondiscriminatory reasons for the strikes, then the District Court will be required to make findings as to whether the strikes were based on race.[9]

---

[9]Unless the District Court determines that Brinson is entitled to relief on his <u>Batson</u> claim, the District Court on remand must also address the other claims set out in Brinson's habeas petition.