NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2745
_____

RONALD GRANT CHAMPNEY,
                                                    Appellant
v.

*SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
LOUIS S. FOLINO, Superintendent of the State Correctional Institution at Greene;
SCHUYLKILL COUNTY DISTRICT ATTORNEY; GERALD J. PAPPERT

*(Pursuant to Rule 43(c), Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-04-cv-00502)
District Judge:  Honorable William W. Caldwell
_____

Submitted Under Third Circuit LAR 34.1(a)
October 25, 2011

Before:  VANASKIE, WEIS, and ROTH, *Circuit Judges*.

(Filed: March 21, 2012)
_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge*.

Ronald Champney appeals the District Court's denial of his petition for habeas

corpus arising out of a 1998 Pennsylvania state court conviction for burglary, robbery,

theft, assault, terroristic threats, recklessly endangering another person, and criminal conspiracy. Champney was sentenced to fourteen and a half to forty years in prison.

Champney raises two issues on appeal: 1) his ineffective assistance of counsel habeas claim was timely under the newly-discovered evidence exception to the habeas statute of limitations in 28 U.S.C. § 2244(d)(1)(D), and 2) five other habeas claims were timely under 28 U.S.C. § 2244(d)(1)(D) because he was entitled to equitable tolling due to his cognitive impairments.[1] For the reasons stated below, we will affirm the District Court's dismissal of Champney's claims as untimely.

## I.

We write primarily for the parties, who are familiar with the factual context and legal history of this case. While the procedural history underlying Champney's appeal is somewhat complex, we will set forth only those matters necessary to our analysis.

After Champney was convicted in 1998 by a Schuylkill County, Pennsylvania jury for burglary, robbery, theft, assault, terroristic threats, recklessly endangering another person, and criminal conspiracy, he requested that his trial counsel, Frank Cori, file an appeal. Cori refused and instead permitted the deadline to expire because Champney had not paid him. Champney attempted to file his appeal *pro se*, but the court rejected it because he was represented by counsel. After approximately three years of post-

---

[1] The District Court had jurisdiction over Champney's habeas petition pursuant to 28 U.S.C. §§ 1331 and 2254. We have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

conviction proceedings, the Superior Court of Pennsylvania reinstated Champney's right to file a direct appeal.

Champney's counsel then filed an *Anders* brief on appeal, arguing that Champney had no non-frivolous arguments. The Pennsylvania Superior Court disagreed that Champney had no non-frivolous arguments, but it nevertheless affirmed Champney's convictions without further briefing. Judgment became final on December 7, 2002 when Champney's deadline to appeal to the Supreme Court of Pennsylvania expired. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Therefore, Champney's deadline for filing a writ of habeas corpus expired on December 7, 2003, one year after his state court judgment became final.

Champney filed a habeas petition in the Middle District of Pennsylvania under 28 § 2254 (the "Petition") on March 8, 2004, ninety days after the statute of limitations expired. The Petition asserted twenty claims, including several claims that the Pennsylvania Superior Court denied Champney's right to effective assistance of counsel by disposing of his appeal on the merits despite Champney's counsel's improper *Anders* brief. On April 5, 2008, Champney filed an amendment to the Petition to add Claim 21 based on additional information he discovered in an unrelated capital post-conviction

3

proceeding.[2] Evidentiary hearings were held May 8 and May 26, 2009, on the issue of whether Champney was entitled to equitable tolling because of alleged mental deficiency.

On August 11, 2008, Champney filed a "Supplemental and Amended" petition for writ of habeas corpus to raise new claims 22 through 27. On January 5, 2010, the District Court dismissed Champney's Petition as time barred, and additionally dismissed his motion to file a supplemental petition advancing claims 21 through 27. On reconsideration, the District Court granted a certificate of appealability ("COA") as to the dismissal of Claim 21 (ineffective assistance of counsel) on limitations grounds.

Champney brought this appeal and further requested that this Court enlarge the COA to include the issue of whether the time to file claims 14, 15, 18, 22 and 24 should be equitably tolled because of his alleged mental incompetence. This Court enlarged the COA as Champney requested.[3]

---

[2] Champney was convicted of the first degree murder of Roy Bensinger on October 25, 1999 in the Court of Common Pleas of Schuylkill County, Pennsylvania. He was sentenced to death on November 17, 1999. Judgment of Sentence was affirmed. *See Commonwealth v. Champney*, 832 A.2d 403 (Pa. 2003). Champney obtained a new trial through the grant of post-conviction relief. The Commonwealth appealed the ruling and Champney filed a cross-appeal. These appeals are pending before the Supreme Court of Pennsylvania.

[3] Appellees moved to strike from Champney's brief Issues III and IV as beyond the scope of the COA because they present arguments on the merits of constitutional claims. The decision to issue a COA is independent of the merits of the claim. *See Miller-el v. Cockrell*, 537 U.S. 322, 331 (2003). We will grant the motion to strike because Issues III and IV inject non-relevant matters into the determination of whether Champney should be granted statutory or equitable tolling.

## II.

We exercise plenary review over statute of limitations issues.  *See Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003).  Although it does not appear that we have definitively decided the standard of review applicable to the question of equitable tolling where there is a dispute concerning the petitioner's mental competence, we have applied *de novo* review where the underlying facts are undisputed.  *See Brinson v. Vaughn*, 398 F.3d 225, 231 (3d Cir. 2005).  *Compare Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010)  ("where the facts are undisputed or the district court rules as a matter of law that equitable tolling is unavailable, we apply the *de novo* standard of review to a district court's refusal to apply the doctrine of equitable tolling; in all other cases, we apply the abuse of discretion standard.") (quoting *Dunlap v. United States*, 250 F.3d 1001, 1007 n. 2 (6th Cir.2001)).  In this case, there is a dispute as to Champney's competence.  In the context of determining a defendant's competence to stand trial, we have held that the district court's factual findings concerning competency are reviewed for clear error.  *See, e.g.*, *United States v. Leggett*, 162 F.3d 237, 241 (3d Cir. 1998).  Because we find that equitable tolling is not warranted in this case under a *de novo* standard of review, we need not decide whether a more deferential standard applies to the District Court's factual findings in this case.

### A.

In Claim 21 of the Petition, Champney argues that the Sixth Amendment ineffective assistance of counsel claim was timely because he discovered the relevant

information for bringing the claim during his unrelated capital post-conviction proceedings. Champney uncovered information indicating that his trial counsel, Frank Cori, had a conflict of interest based on a long-term friendship and criminal partnership with David Blickley, an initial suspect in Champney's murder case and the principal witness against Champney at his murder trial.

During Champney's capital post-conviction proceedings, he subpoenaed information from the Federal Bureau of Investigation concerning its interviews with Blickley. On April 6, 2007, the FBI turned over an interview report to Champney detailing FBI discussions with Blickley concerning alleged criminal undertakings between Blickley and Cori. Champney discovered that Cori continued to represent Blickley in obtaining an agreement with the police to provide information concerning the murder in which Champney was standing trial while Cori was representing Champney.

A habeas petitioner must file within one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The District Court held that Claim 21 was untimely because Champney failed to show that he could not have discovered the information from the FBI report earlier. We agree with the District Court's conclusion, but for slightly different reasons.[4]

---

[4] We also reject Champney's argument that we should allow equitable tolling because Champney's convictions may affect the sentence in his capital case. We agree with the District Court's conclusion that Champney's instant appeal is not a capital case and therefore is not entitled to any special leniency.

A petitioner must file a habeas petition within one year of learning the vital facts necessary to make out his or her claim. *See McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007). To "delay the triggering of the running of the limitations period until all evidence in support of a petition is secured," would create "a result which surely would run contrary to the intent of Congress through its enactment of the AEDPA to promote the finality of convictions." *Id.* at 215. The requisite "factual predicate" of a claim is the set of "vital facts" underlying the claim. *Id.* at 214. Champney knew of the factual predicate of his trial counsel's possible conflict of interest well before receiving the FBI report in 2007 because he already raised the claim in Pennsylvania state courts in 2005 and in 2006. The precise claim that Attorney Cori rendered ineffective assistance of counsel due to a conflict of interest caused by his relationship with David Blickley appears in a counseled state post-conviction petition filed on Champney's behalf on February 28, 2005, in the Court of Common Pleas of Schuylkill County, in a collateral challenge to the conviction at issue here. In this 2005 filing, Champney averred that Cori had multiple conflicts of interest arising from various relationships, including Cori's relationship with Blickley. In a brief filed in the Pennsylvania Superior Court on March 13, 2006 – more than a year before receipt of the FBI report – Champney again argued that Cori was conflicted in his representation because Cori had, at one time, represented Blickley.

The FBI report may have provided greater evidentiary support for Champney's claim, but it did not alert Champney to the claim itself. Champney's Petition was

7

untimely because he filed it more than one year after recognizing the vital facts – Cori's conflict of interest caused by his relationship with Blickley – underlying his claim.

B.

Champney also argues that five other habeas claims were timely based on equitable tolling because he suffers from mental impairments that prevented him from filing the Petition on time.[5]  In determining whether equitable tolling should be granted, we ask whether the petitioner faced extraordinary circumstances that stood in the way of timely filing and whether he or she exercised reasonable diligence.  *See Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011).  We, however, have made clear that "[t]he remedy of equitable tolling is extraordinary, and we extend it only sparingly."  *Santos v. United States*, 559 F.3d 189, 197 (3d Cir. 2009) (internal quotation marks omitted).

Mental incompetence is not a *per se* cause for equitable tolling.  *See Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001).  For tolling to be appropriate, "the alleged mental incompetence must somehow have affected the petitioner's ability to file" a timely action.  *Id.*; *see also Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) (placing the burden on the petitioner to demonstrate with particularized description the causal relationship between the mental deficiency and failure to timely file the petition).

In May 2009, the District Court held an evidentiary hearing concerning Champney's mental competence, at which Dr. Daniel Ragland and Dr. Julie Kessel

---

[5] The one-year filing requirement is not a jurisdictional rule.  *See Day v. McDonough*, 547 U.S. 198, 205 (2006).  Section 2244(d) is subject to equitable tolling in appropriate circumstances.  *Holland v. Florida*, __U.S.__, 130 S. Ct. 2549, 2554 (2010).

testified for Champney. Champney's experts found his cognitive ability diminished, that he was impaired by neurodevelopmental brain dysfunction, and that he suffered from anxiety disorder. The Commonwealth responded with an expert witness to rebut the conclusion and dispute the reliability of the measures used to interpret Champney's cognitive ability.[6] We will not engage in the debate concerning the methodology of the experts' evaluations, as we find Champney's history of timely filing documents in court sufficient to negate the premise that his mental status constituted an "extraordinary circumstance" that impaired his ability to timely file the instant Petition.

We have not previously provided clear direction on what may constitute extraordinary circumstances for purposes of tolling the statute of limitations based on mental incompetence. District Courts within our Circuit take a totality of the circumstances approach when presented with an equitable tolling argument premised on the petitioner's mental incompetency. *See Passmore v. Pennsylvania*, No. 08-705, 2008 WL 2518108 at *3 (M.D. Pa., 2008). A non-exclusive list of factors to consider includes:

> (1) [whether] the petitioner [was] adjudicated incompetent and, if so, when did the adjudication occur in relation to the habeas statutory period; (2) [whether] the petitioner [was] institutionalized for his mental impairment; (3) [whether] the petitioner handled or assisted in other legal matters which required action during the federal limitations period; and (4) [whether] the petitioner supported his allegations of impairment with extrinsic evidence such as evaluations and/or medications.

---

[6] The Commonwealth's expert found that Champney is able to reason and think abstractly, reads at an eighth grade level, and has the capacity to remember information in a very superior range (as high as the 98th percentile).

9

*Id*. (citing *McCray v. Oxley*, 553 F. Supp. 2d. 368, 372 (D. Del. 2008)).

There is no evidence in this case that Champney has ever been adjudicated incompetent or institutionalized for his alleged mental impairments. And while Champney has supplied extrinsic evidence consisting of mental health evaluations, the Commonwealth presented countervailing evidence. Significantly, however, Champney's participation in court proceedings over an extended period of time compel the conclusion that the extraordinary remedy of equitable tolling is not warranted here.

Champney successfully filed a series of *pro se* petitions in 1998 and 1999. Champney initially sought state court relief a week after his November 13, 1998, conviction. In a *pro se* filing docketed November 20, 1998, Champney raised claims of Cori's ineffective assistance in not calling witnesses and not presenting other favorable evidence. Approximately two weeks after his January 6, 1999 sentencing, Champney, again acting *pro se*, filed a petition to dismiss counsel, and a petition for post conviction relief and notice of appeal. In this filing, Champney renewed his earlier claim that Cori was ineffective for failing to call witnesses and in knowingly withholding evidence of his innocence. In February, 1999, Champney, again *pro se*, filed a petition to dismiss counsel; a petition for post conviction relief and notice of appeal; and a statement seeking leave to proceed *in forma pauperis*.

Champney presents no evidence to suggest that his mental capacity deteriorated since filing his initial *pro se* petition in 1998. To the contrary, Champney's own expert,

10

Dr. Ragland, found his mental status to have been stable over time.[7] Champney did not suffer any new mental impairment or injury between the late 1990s, when he was able to act on his own behalf in state court, and during the time when a habeas petition could have been timely filed.[8] Champney's ability to file multiple petitions on his own behalf in 1998 and 1999, which was described as a "tenacious effort" by his counsel, cannot be reconciled with the notion that he is so mentally impaired as to have been unable to fill out the form necessary to initiate a timely habeas filing in 2003. Compare *Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003) (denying equitable tolling based, in part, on the petitioner's history of *pro se* filings within the appropriate time) with *Hunter v. Ferrell*, 587 F.3d 1304, 1308-09 (11th Cir. 2009) (finding petitioner's well-documented, irreversible mental retardation was severe enough that petitioner was unable to understand and comply with the AEDPA's filing requirements based, in part, on the recognition that petitioner never previously filed court documents).

The record contains inconsistencies concerning Champney's mental competency. Although Champney's experts testified to his inability to navigate the procedural rules for

---

[7] Dr. Kessel indicated that Champney had an increased level of anxiety during the relevant time period due to his unrelated capital case proceedings. However, as the District Court noted, and we agree, anxiety and depression would not have disabled Champney from filing the Petition in a timely manner.

[8] Champney suggests that he was only able, according to Dr. Ragland, to file the petitions in 1998 and 1999 with the assistance of a fellow inmate. Because Champney's mental state did not deteriorate from that time, we agree with the District Court's conclusion that Champney could have similarly sought assistance for filing the instant Petition.

habeas relief, the record contains countervailing evidence indicating that any mental impairments would not have so affected his ability to make a timely filing as to warrant the extraordinary relief of equitable tolling. The District Court undertook an extensive analysis of the evidence and found that "Champney was sufficiently functional to have filed a timely 2254 petition." (A. 34.) This finding by the able District Judge is certainly not clearly erroneous. Moreover, our plenary review of the record leads us to the same conclusion. The Commonwealth's expert's conclusion about Champney's mental status, coupled with Champney's history of filing *pro se* complaints, compels us to find that no extraordinary circumstance stood in the way of timely filing the Petition.

III.

For the foregoing reasons, we will affirm the judgment of District Court.