NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2743
_____

CRAIG SAUNDERS,

Appellant

v.

FRANKLIN J. TENNIS, SUPERINTENDENT;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cv-01916)
District Judge:  Honorable Michael M. Baylson
_____

Submitted Under Third Circuit LAR 34.1(a)
May 24, 2012

Before:  RENDELL, FUENTES and HARDIMAN, *Circuit Judges*.

(Filed: May 29, 2012)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Craig Saunders appeals the District Court's denial of his petition for writ of habeas

corpus, arguing that the Pennsylvania state courts and the District Court erred in rejecting

his claim under *Batson v. Kentucky*, 476 U.S. 79 (1986).  We will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recount only the essential facts and procedural history.

In September 2004, Saunders was tried and convicted in Pennsylvania state court on one count of conspiracy to commit escape of a prisoner.  The Honorable Renee Cardwell Hughes presided over his trial.  During jury selection, the prosecution and the defense each received nine peremptory strikes to be used during the selection of the twelve-juror panel and one peremptory strike to be used during the selection of two alternate jurors.  After several individuals in the initial forty-person venire were stricken for cause, remaining candidates were questioned individually.  When individual voir dire concluded, the proceedings went off the record and the parties took turns exercising their peremptory strikes.

After the prosecutor had exercised eight of his nine peremptory strikes, defense counsel objected that the prosecutor was discriminating against African-American women in violation of *Batson*.  Of the twenty-five jurors who were not stricken for cause, thirteen were African-American women.  At the time of Saunders's objection, every one of the prosecutor's exercised strikes had been used to remove an African-American woman from the venire.  At that point, ten jurors had been selected: four African-American women, three white women, two African-American males, and one white male.

2

There is substantial uncertainty regarding what occurred after Saunders's objection. The trial record reflects only the following ruling by the state court:

> COURT: [Y]ou do understand that you cannot make out a *Batson*[] [challenge] if there are four African American women on the panel. And that is the dominant racial demographic on the panel. . . .
>
> . . . .
>
> . . . If there was [sic] no African American females seated on this panel, you can [sic] rightfully say the Commonwealth has stricken a particular class. But . . . there have been four African American females that the Commonwealth agreed to place on the panel, and at least one other African American female the Commonwealth desires who was stricken by the Defense.
>
> . . . So at this point, I cannot deem that you've made out a *Batson*[] claim. The Commonwealth is not required to respond. But your objection is noted for the record.

(App. 171.) The parties agree that the prosecutor never justified his peremptory strikes on the record, but there are other indications that he offered race-neutral explanations off the record.

In Judge Hughes's opinion rejecting Saunders's post-trial *Batson* motion, she wrote:

> The Commonwealth did strike eight (8) African American females during the *voir dire* process and *provided a race neutral basis for each strike*. The Commonwealth's position was further supported by the fact that of the ten jurors chosen, four (4) were African American females. These four were the dominant race and gender of the panel. Given that African American females comprised the majority group on the panel and *each strike exercised by the Commonwealth was race neutral*, the appellant has no viable claim of purposeful discrimination. Appellant's *Batson* challenge fails as he cannot make out a *prima facie* case showing that the circumstances created an inference that the prosecutor struck one or more prospective jurors on the basis

3

of race.

(App. 504 (emphasis added) (citations omitted).)  Although Judge Hughes's opinion purported to cite to pages in the trial transcript containing the prosecutor's race-neutral explanations, the referenced pages contain no such record.  Nevertheless, the fact that the prosecutor at some point provided race-neutral reasons for his strikes is corroborated by both a certificate filed by Judge Hughes with the District Court pursuant to 28 U.S.C. § 2245 and the prosecutor's testimony at a subsequent federal evidentiary hearing.

At the evidentiary hearing, the prosecutor testified that the parties and Judge Hughes discussed the *Batson* challenge for ten to fifteen minutes in the robing room with no court reporter present.  According to the prosecutor, defense counsel restated the *Batson* objection, both sides presented race-neutral reasons for their strikes, and the court reviewed the race and gender of each stricken and seated juror.  The prosecutor claimed he struck the eight African-American women primarily pursuant to his general jury-selection philosophies disfavoring social workers and psychiatrists, as well as former arrestees and their relatives and friends, and preferring law enforcement personnel, public employees, victims of crime, older jurors, and those born and raised outside of Philadelphia.

Judge Hughes's § 2245 certificate stated that she asked both sides to explain their strikes at a sidebar and that the prosecutor "gave unequivocal, race-neutral explanations for each of his peremptory challenges."  (App. 328.)  The certificate also reiterated the

4

basis for the *Batson* ruling:

> After considering the facts and the responses of counsel, including the fact that the majority of the jurors selected at the time of the motion were African-American and of that number, exactly half of the jury was comprised of African-American women, I concluded that neither side was engaging in race-based strikes, and that objecting counsel had failed to establish a *prima facie* showing of discrimination.
>
> When I returned to the bench, I formally recited on the record, the race and gender of each juror stricken by the prosecutor and the racial composition of the eight jurors who had been chosen prior to the motion . . . in order to ensure that the defendants understood from me why the motion was not being entertained further as the defense could not make out a prima facie case.[1]

(App. 328.)

After the Court ruled from the bench, the prosecutor sought to state his race-neutral reasons on the record. But the Court demurred: "Having determined that the defense had not demonstrated a *prima facie* case . . . there was no need for [the prosecutor] to restate his reasons for striking the jurors." (App. 328.) When jury selection resumed, the prosecutor opted not to use his ninth peremptory strike.

After his post-trial motions were denied, Saunders raised his *Batson* claim *pro se* on direct appeal to the Pennsylvania Superior Court. Finding that "a portion of the discussion regarding [Saunders's] *Batson* claim apparently occurred 'off the record'" and noting that "[t]he certified record contains nothing more than the trial court identifying the race and gender of the potential jurors who were struck by the parties," the

5

Pennsylvania Superior Court summarily found "no abuse of discretion" by the trial court. *Commonwealth v. Saunders*, 946 A.2d 776, 782–84 (Pa. Super. Ct. 2008). The Pennsylvania Supreme Court denied Saunders's request for an appeal. *Commonwealth v. Saunders*, 958 A.2d 1047 (Pa. 2008). Saunders then filed a habeas petition under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Pennsylvania on May 4, 2009.

After the case proceeded to federal court, Magistrate Judge Timothy Rice held an evidentiary hearing to develop the record regarding Saunders's *Batson* claim. As described above, the prosecutor testified regarding the trial proceedings surrounding Saunders's *Batson* claim and the prosecution's justifications for striking eight African-American women from the jury pool. The Magistrate Judge found that Judge Hughes had ended her inquiry at the *prima facie* stage of the *Batson* inquiry, citing her statements at trial, her post-trial opinion, and her § 2245 certificate. He disregarded her § 2245 certificate, finding that she offered inconsistent explanations for her *Batson* ruling, her decision was based on unsupported facts and inaccurate statements of the law, and her description of the off-the-record *Batson* discussion was implausible and inconsistent with the prosecutor's testimony. The Magistrate Judge further concluded that Judge Hughes's determination that the prosecutor's strike pattern failed to create an inference of

---

[1] Judge Hughes's assertion in her § 2245 certificate that only eight jurors had been chosen for the final panel at the time of Saunders's *Batson* objection contradicts the trial record, which shows that ten jurors had been seated at that time. (*See* App. 171.)

discrimination sufficient to establish a *prima facie Batson* claim was contrary to clearly established Supreme Court precedent. Therefore, he accorded no deference to Judge Hughes's decision and proceeded to determine *de novo* whether Saunders's *Batson* claim was meritorious at step three based on the plausibility of the prosecutor's race-neutral explanations for his strikes. The Magistrate Judge concluded that Saunders's *Batson* claim ultimately failed because "the evidence . . . [did] not establish that the Commonwealth engaged in purposeful discrimination against African-American and/or female jurors." (App. 357.) Accordingly, the Magistrate Judge recommended that Saunders's habeas petition be denied.

In a comprehensive forty-three page opinion, the District Court likewise concluded that Saunders's habeas petition should be denied because his *Batson* claim failed. In that opinion, the District Court disagreed with the Magistrate Judge regarding the weight to be given to Judge Hughes's certificate and the extent of her *Batson* analysis at trial. Affording the § 2245 certificate the presumption of correctness generally applied to state court findings under § 2254(e)(1) and finding "nothing in the record to contradict Judge Hughes's statement that [the prosecutor] gave 'unequivocal, race neutral explanations for each of his peremptory challenges' in the off the record conversation," the District Court found that Judge Hughes had proceeded through a full, three-step *Batson* analysis at trial, albeit only implicitly and largely off the record. *Saunders v. Tennis*, No. 09-1916, 2011 WL 2117559, at *10, *13–14 (E.D. Pa. May 26, 2011). Therefore, although the District

7

Court agreed with the Magistrate Judge that Judge Hughes had "incorrectly interpreted *Batson* at trial" and in her post-trial opinion with respect to Saunders's *prima facie* burden, *id.* at \*11–12, the District Court applied the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, and affirmed the state-court determination that "Saunders did not meet his burden of showing that purposeful racial discrimination, and not the proffered explanation[s], actually motivated the prosecutor's conduct," *id.* at \*15. Nevertheless, the District Court also conducted a thorough *de novo* analysis of the plausibility of the prosecutor's race-neutral justifications, ultimately reaching the same conclusion as the Magistrate Judge: "[W]hile the pattern of strikes and other statistical evidence was sufficient to meet Saunders's[] burden at step one, Saunders has failed to meet his steps two and three burden of persuasion to establish that the Commonwealth exercised its peremptory strikes based on discriminatory motivation." *Id.* at \*16–17.

The District Court granted a certificate of appealability on Saunders's *Batson* claim—specifically as to the degree of deference owed to Judge Hughes's § 2245 certificate and whether the prosecutor "exercised [his] peremptory strikes in a racially discriminatory manner in violation of *Batson*" (App. 3)—and Saunders timely appealed.[2]

## II

We exercise plenary review over the District Court's denial of habeas corpus, and we review its factual findings for clear error. *United States v. Lilly*, 536 F.3d 190, 195

8

(3d Cir. 2008).  Under AEDPA, 28 U.S.C. § 2254(d), we may not grant Saunders habeas

relief unless the state court's *Batson* ruling was "contrary to or an unreasonable

application of clearly established Supreme Court law, or . . . involve[d] an unreasonable

determination of the facts."  *Bond v. Beard*, 539 F.3d 256, 263 (3d Cir. 2008) (citing 28

U.S.C. § 2254(d)(1)–(2)).

A

It is well-established under *Batson* that "the Fourteenth Amendment's Equal

Protection Clause prohibits a prosecutor from using a peremptory challenge to strike a

prospective juror solely on account of race."  *Holloway*, 355 F.3d at 719 (citing *Batson*,

476 U.S. at 88).  The *Batson* analysis proceeds in three steps:

> First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.  Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question.  Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices.  Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.  This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

*Rice v. Collins*, 546 U.S. 333, 338 (2006) (citations omitted) (quoting *Purkett v. Elem*,

514 U.S. 765, 767–68 (1995) (per curiam)); *accord Miller-El v. Dretke*, 545 U.S. 231,

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254, and we have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

251–52 (2005). At the third step, "something more than a 'terse,' 'abrupt' comment that the prosecutor has satisfied *Batson*" is required. *Riley v. Taylor*, 277 F.3d 261, 289 (3d Cir. 2001) (citations omitted).

Saunders argues—and both the Magistrate Judge and the District Court found— that the state court's step-one determination that Saunders failed to demonstrate a *prima facie* case was contrary to *Batson*. We agree. First, the state court unreasonably applied *Batson* when it rejected Saunders's objection on the basis that four African-American women had been selected for the jury, making African-American women the best-represented demographic on the panel. *Batson* makes clear that "the State's privilege to strike *individual* jurors through peremptory challenges" is restricted by the Equal Protection Clause. *Batson*, 476 U.S. at 89 (emphasis added). Accordingly, "a prosecutor's purposeful discrimination in excluding even a single juror on account of race cannot be tolerated . . . [and] a prosecutor . . . can find no refuge in having accepted other[] venirepersons of that race for the jury." *Holloway*, 355 F.3d at 720. Second, the prosecutor's pattern of striking eight African-American women in a row, thus using all of his strikes exercised at that point to remove African-American women, was clearly sufficient to satisfy Saunders's step-one burden. *See, e.g.*, *Batson*, 476 U.S. at 97 (noting that a pattern of strikes against black jurors can create an inference of discrimination); *Williams v. Beard*, 637 F.3d 195, 215 (3d Cir. 2011) (use of 85% of peremptory strikes to eliminate African-Americans was sufficient); *Brinson v. Vaughn*, 398 F.3d 225, 235 (3d

10

Cir. 2005) (use of thirteen out of fourteen strikes against African-American jurors was "alone sufficient to establish a prima facie case"); *see also Williams*, 637 F.3d at 214 (noting that step one "is not intended to be particularly onerous").

Because we conclude that Saunders satisfied his step-one burden by objecting on the basis of the prosecutor's use of eight out of eight strikes against African-American women, it would have been "contrary to" or an "unreasonable application of" *Batson* for the state court to end its inquiry there. *Bond*, 539 F.3d at 264; *Hardcastle v. Horn*, 368 F.3d 246, 259 (3d Cir. 2004). The parties dispute whether that occurred, however, and the Magistrate Judge and the District Court likewise disagree.[3] Relatedly, the parties dispute the degree of deference owed to Judge Hughes's § 2245 certificate, which could inform the factual determination of whether she ruled on Saunders's *Batson* claim at step one or proceeded to steps two and three. Indeed, the District Court found that the Magistrate Judge did not sufficiently defer to the certificate.[4] If the state court failed to

---

[3] Our precedents confirm the difficulty of gleaning from ambiguous state trial court rulings which *Batson* steps were performed. *See Bond*, 539 F.3d at 268 (finding that the state trial court's post-trial explanation of its *Batson* ruling showed it conducted a step-three analysis, curing its "inartful[]" statements at trial suggesting that it stopped at step two); *Hardcastle*, 368 F.3d at 256 (noting that the Pennsylvania Supreme Court first conflated steps one and two and then "proceeded to step three, only to conclude that Hardcastle had failed to establish a *prima facie* case of discrimination, thus indicating that, technically speaking, its analysis never proceeded beyond step one").

[4] The degree of deference owed to a state judge's § 2245 certificate is an open question. *See Weidner v. Thieret*, 932 F.2d 626, 633 (7th Cir. 1991) ("Where state trial judges fail to adequately develop the relevant facts so that not even implicit findings can be gleaned from the record, the habeas procedure is better served by a de novo hearing

11

conduct either step two or three, "we would not apply AEDPA deference" to its *Batson* ruling and "would review the issue *de novo*." *Bond*, 539 F.3d at 264. The Commonwealth also contends that the evidentiary hearing was improper under both *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), and § 2254(e)(2). If we concluded that the prosecutor never offered race-neutral justifications at step two or that the state court never conducted a step-three analysis, an "evidentiary hearing at which the prosecutor might rely upon his recollection of the voir dire and make reference to his trial notes would seem warranted." *Holloway*, 355 F.3d at 725; *accord, e.g.*, *Coombs v. Diguglielmo*, 616 F.3d 255, 263 (3d Cir. 2010); *Brinson*, 398 F.3d at 235 (remanding for an evidentiary hearing and *de novo* review where the state court's failure to proceed to step two was contrary to *Batson*). The propriety of the evidentiary hearing would further depend on whether Saunders diligently sought to amplify the *Batson*-challenge record in state court. *See* 28 U.S.C. § 2254(e)(2).

These disputed issues raise difficult questions best left for another day because they are not outcome-determinative here. Even if we grant Saunders every benefit of the doubt—i.e., (1) by assuming that the federal evidentiary hearing was properly held; (2) by declining to afford AEDPA deference; and (3) by accepting Saunders' argument that no

---

than by allowing state judges to cast their minds back to the state trial." (citation omitted)); *Wang v. Withworth*, 811 F.2d 952, 956–57 (6th Cir. 1987) (rejecting a judge's certificate asserting that he granted a mistrial where the trial record plainly showed he found a lack of sufficient evidence to convict); *Strader v. Troy*, 571 F.2d 1263, 1267 (4th Cir. 1978) (rejecting a trial judge's certificate on the basis that it was "equivocal").

deference is owed to Judge Hughes's certificate—we agree fully with the District Court that Saunders's *Batson* claim fails at step three. For the reasons set forth in the District Court's *de novo* analysis, *Saunders*, 2011 WL 2117559, at *16–17, Saunders has not satisfied his burden of showing purposeful discrimination in the prosecutor's peremptory strikes because he has not discredited the prosecutor's race-neutral reasons or further demonstrated discriminatory motive. *Cf., e.g.*, *Miller-El*, 545 U.S. at 240–63 (describing ways in which *Batson* objectors may show that the opponent's race-neutral explanations are pretextual or implausible). Therefore, we will affirm the District Court's judgment denying Saunders's petition for writ of habeas corpus.